UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CINDY CHEN *on behalf of herself and others similarly situated*, <br><br> Plaintiff, <br><br> -against- <br><br> SHANGHAI CAFÉ DELUXE, INC d/b/a Shanghai Cafe, YILI WENG a/k/a Eileen Weng, PING LIN, and XINSHENG GU a/k/a John Gu, <br><br> Defendant. | 17cv02536 (DF) <br><br> **MEMORANDUM AND ORDER** |

**DEBRA FREEMAN, United States Magistrate Judge:**

In this age-discrimination case, which is before this Court on consent under 28 U.S.C.
§ 636(c), plaintiff Cindy Chen ("Plaintiff") has asserted claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; the New York State Human Rights Law ("NYSHRL"), NY Exec. Law § 290, and the New York City Human Rights Law ("NYCHRL") NYC Admin. Code § 8-101, against her former employer, Shanghai Café Deluxe, Inc d/b/a Shanghai Café ("Shanghai Café") and three individuals – Yili Weng a/k/a Eileen Weng ("Weng"), Ping Lin ("Lin"), and Xinsheng Gu a/k/a John Gu ("Gu") – who, according to Plaintiff, had supervised her employment.[1]  Currently before the Court is a motion brought by defendants Shanghai Café, Weng, Lin, and Gu (collectively "Defendants") for summary judgment dismissing Plaintiff's claims in their entirety.  (Dkt. 29.)

---

[1] This is one of two related cases before this Court on consent.  In the other case, which involves the same parties, but has not been consolidated with this case, Plaintiff has asserted claims against Defendants for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the New York Labor Law.  *See Chen v. Shanghai Café Deluxe, Inc., et al.*, No. 16cv4790 (DF).

For the reasons discussed below, Plaintiff's ADEA claims against the individual defendants are dismissed *sua sponte* because the ADEA does not provide for individual liability, and, as to Plaintiff's remaining claims, Defendants' motion for summary judgment is granted in part and denied in part.  Specifically, Defendants are granted summary judgment dismissing (1) Plaintiff's claims for discrimination in the terms and conditions of her employment (*i.e.*, her claims alleging a discriminatory denial of "side work"), and (2) all of Plaintiff's NYSHRL and NYCHRL claims against defendant Lin.  Summary judgment is denied as to Plaintiff's claims for discriminatory termination, as asserted against defendant Shanghai Café under the ADEA, as well as under the NYSHRL and the NYCHRL, and as asserted against defendants Weng and Gu under the NYSHRL and the NYCHRL.

## BACKGROUND[2]

### A.    Factual Background

#### 1.    The Restaurant and Its Management

Shanghai Café is a Chinese restaurant located on Mott Street, in Manhattan.  (Def. 56.1 Stmt. ¶ 4.)  Defendants Weng and Gu each have an ownership interest in the restaurant, and they admit to sharing the restaurant's management responsibilities.  (*Id.* ¶¶ 5, 7, 11; *see also* Affidavit of Yili Weng in Support of Motion for Summary Judg[]ment, sworn to Feb. 26, 2018 ("Weng Aff.") (Dkt. 31) ¶ 3; Affidavit of Xinsheng Gu in Support of Motion for Summary Judg[]ment,

---

[2] The facts summarized herein are largely drawn from the parties' Statements pursuant to Local Civil Rule 56.1.  (*See* Defendants' Rule 56.1 Statement of Facts, dated Apr. 20, 2018 ("Def. 56.1 Stmt.") (Dkt. 34); Plaintiff's Statement Pursuant to Local Rule 56.1, dated May 4, 2018 ("Pl. 56.1 Resp.") (Dkt. 37).)  Unless otherwise noted, citations herein to Defendants' Rule 56.1 Statement, without cross-reference to Plaintiff's responsive Statement, indicate that the cited factual assertions are not in dispute.  Where the parties do dispute relevant facts, the Court has looked to the underlying evidence that they have submitted, including affidavits and deposition testimony.

sworn to Feb. 26, 2018 ("Gu Aff.") (Dkt. 30) ¶ 3.)  For the most part, the parties agree that Weng manages the waiters/servers (whom she describes as the "front of house" employees), and Gu manages the kitchen workers (whom he describes as the "back of house" employees).  (Def. 56.1 Stmt. ¶¶ 7, 11; Pl. 56.1 Resp. ¶¶ 7, 11; *see also* Weng Aff. ¶ 3; Gu Aff. ¶ 3.)

Both Weng and Gu acknowledge that they have the authority to hire and fire employees, and further acknowledge that they supervise and direct employees' work (Weng Aff. ¶ 3; Gu Aff. ¶ 3), but they maintain that, when it comes to the restaurant's waitstaff, only Weng plays such managerial and supervisory roles (*see* Weng Aff. ¶ 4 ("Mr. Gu has never exercised any managerial role for the servers, . . . as I have always been the sole manager of the server employees"); Gu Aff. ¶ 4 ("My role is solely to manage the kitchen")).  Plaintiff, who, as set out below, worked in the restaurant as a waitress, concedes that Weng was her "immediate boss" and that Gu was the "kitchen boss."  (Declaration of John Troy in Opposition to Summary Judgment, dated May 4, 2018 ("Troy Decl.") (Dkt. 35), Ex. 3 (Affidavit of Cindy Chen in Opposition to Summary Judgment, sworn to May 4, 2018 ("Pl. Aff.") (Dkt. 35-3)) ¶ 4.)  Nonetheless, Plaintiff contends that Gu could "also direct [her] in [her] work."  (*Id.*)

According to Plaintiff, defendant Lin is Weng's mother and "the ultimate boss."  (*Id.*) Based on Lin's deposition testimony, however, Defendants state that Lin does not have any ownership interest in the restaurant (Def. 56.1 Stmt. ¶ 12 (citing Declaration of Michael Chong, dated Mar. 1, 2018 ("Chong Decl.") (Dkt. 32), Ex. D (excerpts of transcript of Lin Deposition, conducted Jan. 3, 2018 ("Lin Dep.")), at 7:19-20)), and, while Plaintiff purports to dispute this (*see* Pl. 56.1 Resp. ¶ 12 (disputing that Lin lacked an ownership interest in the restaurant "at any point in the relevant time period"), she has not provided any evidence in support of her contrary

position.[3]  Further, in Lin's deposition, Lin testified that she only works at the restaurant part-time, preparing the "*xiao long bao,*" which is a type of Chinese bun.  (Lin Dep., at 7:21-8:17; *see also* Def. 56.1 Stmt. ¶ 13; Pl. 56.1 Resp. ¶ 13.)  Defendants contend that Lin plays no management role, at all, at Shanghai Café, asserting that she "does not manage, supervise or hire and fire the employees of the restaurant."  (Def. 56.1 Stmt. ¶ 14 (citing Lin Dep., at 11:4-14); *but see* Pl. 56.1 Resp. ¶ 14 (disputing this).)

As relevant to the question of whether the protections of the ADEA extend to the employees of Shanghai Café,[4] the parties also dispute the number of employees who worked at the restaurant during the relevant period.  Defendants assert that, "based on [Weng's] review of employment records," the restaurant employed fewer than 20 employees for each and every one of the 20 calendar weeks that preceded Plaintiff's alleged discriminatory termination (Weng Aff. ¶ 7), while Plaintiff contends that, during her time working there, the restaurant always had about 25 employees (Pl. Aff. ¶ 14 (recalling about eight waitresses, nine dim sum/*xiao long bao* chefs, and eight other kitchen workers)).  Plaintiff further notes that the records purportedly relied upon by Weng to support Defendants' assertion have not been placed before the Court, and that Defendants' counsel has previously taken the position that Defendants "[did] not retain records for former employees."  (*See* Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated May 4, 2018 ("Pl. Mem.") (Dkt. 36), at 4; Troy Decl., Ex. 1; *see also* Pl. 56.1 Resp. ¶¶ 41, 42.)

---

[3] Plaintiff has only cited her own deposition testimony in support of her assertion that Lin had an ownership interest in the restaurant (*see id.*), but she has not even submitted the cited portion of the deposition transcript.  Plaintiff has also failed to explain how she has personal knowledge of the restaurant's ownership.

[4] *See* Discussion, *infra*, at Section I(B).

2.   **Plaintiff's Employment at Shanghai Café**

Plaintiff started working at Shanghai Café as a waitress/server in mid-April 2012, having

been referred by a friend, Su Ping ("Amy") Yu ("Yu"),[5] who was already working there, also as

a waitress.  (Def. 56.1 Stmt. ¶ 31; Pl. Aff. ¶ 3; Chong Decl., Ex. E (excerpts of transcript of

Plaintiff's deposition, conducted Dec. 27, 2017 ("Pl. Dep.")), at 416-5:4-5; Yu Aff. ¶ 5; Weng

Aff. ¶ 5.)  At the time Plaintiff began her employment, she was 49 years old, and Yu was 47.

(*See* Def. 56.1 Stmt. ¶¶ 47, 48 (stating Plaintiff's and Yu's dates of birth (citing Pl. Dep., at 35:4-

5; Weng Aff. ¶ 19)).)[6]

In her Complaint, Plaintiff alleges that, during the time she was employed at Shanghai

Café, Defendants altered the "terms and conditions of [her] employment" to be less favorable to

her because of her age.  (*See* Complaint, dated Apr. 9, 2017 ("Compl.") (Dkt. 1) ¶¶ 43, 48, 52,

56, 60.)  The only specific allegation she makes in this regard, however, is that defendant Weng

"forbade" both Plaintiff and Yu from doing certain work – referred to by Plaintiff as "side

work" – and "restricted [them] to waiting tables, a task for which they would earn tips for the tip

pool."  (*Id.* ¶ 31.)  Although Plaintiff's allegations are not entirely clear on this point, it appears

that she is alleging that certain individuals, including Weng, improperly shared in the tips that

---

[5] In their Rule 56.1 Statement, Defendants variously spell Yu's name as "Shu Ping Yu" and "Su Ping Yu."  (*See* Def. 56.1 Stmt. ¶¶ 17, 31.)  This Court assumes that the appropriate English spelling is the one contained in the Affidavit that Yu has submitted.  (*See* Troy Decl., Ex. 5 (Affidavit of Su Ping Yu, sworn to Jan. 3, 2018 ("Yu Aff") (Dkt. 35-5)).)

[6] Defendants' Rule 56.1 Statement, the Weng Affidavit, the submitted excerpts of Plaintiff's deposition testimony, and Plaintiff's interrogatory responses each state the full dates of birth of Plaintiff and/or other Shanghai Café employees.  (*See* Def. 56.1 Smt. ¶¶ 47, 48; Weng Aff. ¶ 19; Pl. Dep., at 35:5; Chong Decl., Ex. F (response to Interrogatory No. 1); Troy Decl., Ex. 4 (same).)  Thus, each of these filings was made in violation of Rule 5.2 of the Federal Rules of Civil Procedure.  Accordingly, this Court will direct that these submissions be placed under seal, and that Defendants file redacted versions on the public docket.

were earned by the waitstaff through waiting tables (*see id.* ¶¶ 29, 30), and that the "side work" was preferred by the waitstaff, either because it was not tipped work or because any tips earned for that work were not contributed to the improperly shared tip pool (*see* Def. 56.1 Stmt. ¶ 17; Pl. 56.1 Resp. ¶ 17).  Also, in an unsworn response to Defendants' Interrogatories, Plaintiff states that "[d]oing side jobs was more like a rest for wait staff because they can sit for a while rather than going around the restaurant and taking care of customers all the time."  (Chong Decl., Ex. F (response to Interrogatory No. 11); Troy Decl., Ex. 4 (same).)

In moving for summary judgment on Plaintiff's claim that she was discriminated against in the terms and conditions of her employment, Defendants offer a sworn statement by Weng that she made the "managerial decision" as to which servers would be assigned to perform "side work," and that this decision "was not based on or influenced in any way by the age of any of the servers."  (Weng. Aff. ¶ 18.)  Plaintiff offers no specific evidence to contest this.  (*See* Def. 56.1 Stmt. ¶ 9; Pl. 56.1 Resp. ¶ 9.)

### 3.    The Circumstances Under Which Plaintiff's Employment Ended

On or about January 27, 2016, while still employed at Shanghai Café, Plaintiff traveled to China to visit her parents.  (*See* Def. 56.1 Stmt. ¶¶ 20, 32; *see also* Pl. Aff. ¶ 6 (stating that Plaintiff visited her parents in Shanghai starting on January 28, 2016).)  Plaintiff returned from this trip on March 8, 2016, after having been away for over five weeks.  (*See* Def. 56.1 Stmt. ¶¶ 20, 32; Pl. Aff. ¶ 6.)  According to Plaintiff, Weng had approved Plaintiff's entire trip as vacation time.  (Pl. Aff. ¶ 5; Pl. Dep., at 11:15-23.)  According to Defendants, however, Plaintiff had merely "advised" Weng that she would be traveling, and had indicated that her trip would only last one to two weeks.  (Weng Aff. ¶ 12.)

It is undisputed that, during the period when Plaintiff was away, Defendants hired replacement servers to perform her job.  (Def. 56.1 Stmt. ¶ 22; Pl. 56.1 Resp. ¶ 22.)  Weng contends that these workers were hired on a "temporary" basis and were told that they were only being hired to work during Plaintiff's absence.  (Weng Aff. ¶ 13.)  According to Weng, the hiring was necessary "so that the restaurant would be fully staffed" (*id.*), and "[i]t was particularly critical to hire a temporary 'replacement' server for [Plaintiff] when she did not return from China after one to two weeks, . . . as [Plaintiff] was in China during the 2016 Chinese New Year[,] . . . [which] is the restaurant's busiest time of year (*id.* ¶ 14).  Plaintiff concedes that Chinese New Year is a busy time for a Chinese restaurant (Pl. 56.1 Resp. ¶ 25), but disputes that any workers hired to replace her were intended by Defendants to be "temporary" workers (*see* Pl. 56.1 Resp. ¶¶ 22, 23).

Plaintiff states that, in late February of 2016, while she was still in China, she called Weng to confirm that she could resume working once she returned to the United States.  (Pl. Aff. ¶ 7.)  According to Plaintiff, Weng told her, at that time, that she should call again when she returned.  (*Id.*)  Plaintiff then states that, on March 8, 2016, upon her return, she called Weng to ask when she could start working again, and Weng instructed her to call back on Sunday, March 13, 2016.  (*Id.* ¶ 8.)  Before Plaintiff made that follow-up call, though, she claims to have heard from two co-workers on March 12, who purportedly told her that the restaurant management did not want her to return to her job because of her age.  (*Id.* ¶¶ 9, 10.)

The first of these co-workers was a kitchen worker, whom Plaintiff identifies in her Affidavit as "Mr. Chang" ("Chang").  (*Id.* ¶ 9.)[7]  According to Plaintiff, Chang told her "[t]hat

---

[7] In an unsworn interrogatory response, Plaintiff appears to identify Chang as "Mr. Chen." (Chong Decl., Ex. F (response to Interrogatory No. 3); Troy Decl., Ex. 4 (same).)

the bosses didn't want [her] because [she was] too old." (*Id.*)  Plaintiff, however, has submitted

no supporting affidavit from Chang, directly recounting any statements made by "the bosses," or

identifying them.

The second of the co-workers with whom Plaintiff purportedly spoke was Yu.  (Pl. Aff.

¶ 10.)  Unlike Chang, Yu has now submitted a sworn Affidavit, attesting that, in March 2016,

she was told by Gu and Lin that Plaintiff would not be brought back to work.  (*See* Yu Aff.

¶¶ 6-17.)  Specifically, Yu recounts the following in her Affidavit:

> I saw GU and 'Xiao Lin'[8] laughing cheerfully at the sight of the
> two new young waitresses in their 20s who were replacements for
> [Plaintiff].
>
> GU said to me 'Amy, you see.'
>
> And I looked at the two new waitresses.
>
> I said to both Gu and 'Xiao-LIN' that '[Plaintiff] told me that she
> is returning to work next week, then don't we have extra workers.'
>
> 'Xiao-LIN' replied that 'We do not keep her anymore,' referring to
> [Plaintiff].
>
> I asked, 'Why is that?'
>
> Gu added, 'Now we continue to employ young employees only,
> not the old ones anymore.'

(*Id.* ¶¶ 11-17.)[9]

---

[8] Yu describes "Xiao Lin" as the "chief of the *xiaolongtangbao* ('Steamed Dumpling')
section" (*id.* ¶ 10), and thus the person she identifies as Xiao Lin is presumably defendant Lin.

[9] Yu goes on to state in her Affidavit that she then told Gu, "I am also old, you can also
fire me," but that Gu and Lin responded, "We will not fire you."  (*Id.* ¶¶ 18-19.)  According to
Yu, she was still employed at Shanghai Café as of January 3, 2018, the date of her Affidavit.  (*Id.*
¶ 3).  Defendants also note that, in discovery, they identified six other restaurant employees who
"are over the age of 40 and who are of a similar age or older then [] Plaintiff."  (Def. 56.1 Stmt.
¶ 48 (citing Weng Aff. ¶ 19); *see also* Pl. 56.1 Resp. ¶ 48.)

Plaintiff states in her Affidavit that, after hearing from Chang and Yu, she tried to call Weng again on March 13, 2016, but Weng did not answer her phone.  (Pl. Aff. ¶ 11.)[10]  She further states that she then went to Shanghai Café on March 14, 2016, and asked Weng, in person, if she had "schedule[d] [Plaintiff] yet" to work.  (*Id.* ¶ 12.)  According to Plaintiff, Weng responded by stating, "No, I did not schedule you.  You go and sue me."  (*Id.*)  When asked at her deposition whether she asked Weng *why* she had not scheduled her to work, Plaintiff answered, "There is nothing to ask.  She didn't want me, so what's the point of asking?"  (Pl. Dep., at 21:9-12.)

Weng describes her March 14th encounter with Plaintiff differently, attesting to the following:

> After [Plaintiff] returned from China . . ., she came to the restaurant and spoke to me and demanded that she be put back o[n] the work schedule for servers immediately.  I explained to [Plaintiff] that the schedule for that week had already been prepared, that it had been necessary to hire a temporary replacement server to work during [Plaintiff's] absence, when [Plaintiff] did not return after one to two weeks as expected, and that it was only fair that I provide notice to the temporary replacement worker that [Plaintiff] had now returned and was ready to resume working as a server.
>
> [Plaintiff]s response was to demand that unless she was placed on the schedule immediately, she would sue me.  [Plaintiff] then left the restaurant and never returned . . . .

(Weng Aff. ¶¶ 15-16.)

---

[10] This particular statement is contrary to one of Plaintiff's unsworn interrogatory responses, which states that, "[o]n March 13, 2016, Plaintiff called [] Weng again to ask if she had been added back into the work schedule.  [] Weng replied that she was busy and promised to call back that night, but never did so."  (Chong Decl., Ex. F (response to Interrogatory No. 13; Troy Decl., Ex. 4 (same).)

While Defendants contend that Plaintiff thus left her job of her own accord (*Id.* ¶ 17 (stating that Plaintiff "voluntarily quit when [Weng] was unable to meet her demand that she be placed on the schedule immediately")), Plaintiff claims that she was either fired or constructively discharged, and alleges that her termination was based on age discrimination (*see* Pl. Mem., at 6-8). As of the date of her alleged termination, Plaintiff was 53 years of age. (*See* Def. 56.1 Stmt. ¶¶ 15, 47.) According to Plaintiff, after leaving the restaurant on March 14, 2016, she went to the "Labor Department" and complained that she had been subjected to age discrimination. (*Id.* ¶ 35.) According to her Complaint, she filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about June 24, 2016 (Compl. ¶ 4), and, on March 10, 2017, the EEOC issued her a Notice of Right To Sue (*id.* ¶ 5).

### B.   Procedural History

Plaintiff commenced this action on April 9, 2017, by filing a Complaint against Defendants that was characterized as a putative "collective action."[11]   (*See* Compl. ¶ 40 (stating that the action was being brought "individually and on behalf of all other and former non-exempt wait staff and kitchen staff over the age of forty (40) who have been or were employed by the Defendants and who were terminated or had their terms and conditions of employment adversely altered because of their age on or after January 26, 2016").)

---

[11] As ADEA "class" actions follow the procedures of Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 216(b), rather than Fed. R. Civ. P. 23, ADEA actions involving multiple plaintiffs may be understood as "collective" actions. *See Lawrence v. Town of Irondequoit*, 246 F. Supp. 2d 150, 171 (W.D.N.Y. 2002) (discussing collective action for ADEA claim pursuant to FLSA § 216(b)); *Krueger v. New York Telephone Co.*, 163 F.R.D. 446, 447 (S.D.N.Y. 1995) (addressing a collective opt-in action for ADEA claims). To maintain a collective action, "the named plaintiffs and the proposed members of the class must be 'similarly situated,'" and "the proposed class members must consent in writing to be bound by the result of the suit or 'opt-in.'" *Lawrence*, 246 F. Supp. 2d at 171 (internal quotations and citation omitted). As Plaintiff has not moved for collective certification, the Court will treat her Complaint as an individual action.

On April 20, 2018, following discovery, Defendants filed their motion for summary judgment (Dkt. 29), supported by their Rule 56.1 Statement, the Chong Declaration and exhibits thereto, the Affidavits of Weng and Gu, and a memorandum of law (Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated Mar. 1, 2018 ("Def. Mem.") (Dkt. 33)).[12]  In their memorandum, Defendants argue that: (1) based on the number of employees at the restaurant, Plaintiff cannot not establish that the business was covered by the ADEA; and (2) Plaintiff, in any event, and as to all of her discrimination claims, cannot make out a *prima facie* case of discrimination.  (*See generally* Def. Mem.)  On this second point, Defendants more specifically contend that Plaintiff cannot demonstrate that she was subjected to any "adverse employment action" (either with respect to the alleged denial of "side work" or with respect to her purported "termination") and that, even if Plaintiff could raise a material issue of fact as to whether she was fired, as opposed to having left her job voluntarily, the evidence of record is insufficient to permit an inference that her termination was based on her age.  (*See id.*)

Plaintiff filed her opposition to Defendant's motion on May 4, 2018 (*see* Troy Decl. and exhibits thereto; Pl. 56.1 Resp.; Pl. Mem.), arguing that material issues of fact preclude summary judgment on the issues of (1) ADEA coverage; (2) whether her employment was terminated, and (3) whether the circumstances of her claimed termination may give rise to an inference of discrimination (*see generally* Pl. Mem.).  In her opposition memorandum, Plaintiff does not address Defendants' arguments regarding the alleged denial of "side work."

Defendants filed a reply memorandum on May 11, 2018 (Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated May 11, 2018 ("Def. Reply

---

[12] Defendants originally filed its motion and supporting papers on March 1, 2018 (*see* Dkt. 28), but refiled the motion on April 20, 2018 to correct a filing error.

Mem.") (Dkt. 38)), conceding that, in opposition, Plaintiff had raised a material issue of fact as

to ADEA coverage of the restaurant (*see id.*, at 1), but otherwise reiterating their initial

arguments as to why summary judgment in their favor should be granted (*see generally id.*)  On

reply, Defendants also take issue with the adequacy of Plaintiff's responsive Rule 56.1

Statement, contending that, in any instance where Plaintiff failed to cite evidence in support of

her position that particular facts stated by Defendants are "disputed," those facts should now be

deemed admitted.  (*See id.*, at 2-4.)

## DISCUSSION

## I.      APPLICABLE LEGAL STANDARDS

### A.      Summary Judgment

#### 1.      Rule 56

Under Rule 56, a motion for summary judgment should be granted "if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996).  The moving party bears

the burden of showing that no genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 157 (1970).  This burden may be satisfied "by pointing out the absence of

evidence to support the non-movant's claims."  *Citizens Bank of Clearwater v. Hunt*, 927 F.2d

707, 710 (2d Cir. 1991) (citing *Celotex*, 477 U.S. at 325).

Once the movant meets this burden, the non-moving party "must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*,

477 U.S. at 322-23).  Specifically, the non-moving party must cite to "particular parts of

materials in the record" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute" as to any material fact.  Fed. R. Civ. P. 56(c)(1).  The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Rather, a party opposing summary judgment "must lay bare [its] proof in evidentiary form and raise an issue of fact sufficient to send to the jury."  *Weiss v. La Suisse, Societe D'Assurances Sur La Vie,* 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003) (internal quotation marks and citations omitted); *see Smith v. Menifee*, No. 00cv2521 (DC), 2002 WL 461514, at *3 (S.D.N.Y. Mar. 25, 2002) (holding that the non-moving party must present "significant probative evidence" tending to support its claims (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968))).

In reviewing the evidentiary record, the court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor."  *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001).  If, even viewed in this light, there is not "sufficient evidence favoring the non[-]moving party for a jury to return a verdict for that party," or if the "evidence is not significantly probative," then summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).  It is well-settled, however, that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for

summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (citations omitted).

The issue for summary judgment is "not whether [the court] thinks the evidence unmistakably

favors one side or the other but whether a fair-minded jury could return a verdict for the

[non-movant] on the evidence presented." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778,

788 (2d Cir. 2007) (internal quotation marks and citation omitted).

### 2.   Local Civil Rule 56.1

Under this Court's rules, a party moving for summary judgment under Rule 56 must

submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as

to which the moving party contends there is no genuine issue to be tried," Local Civ. R. 56.1(a),

and the opposing party must submit a correspondingly numbered statement in response,

additionally setting out, if necessary, material facts showing genuine triable issues, *see* Local

Civ. R. 56.1(b).  The Rule provides that the facts set out by the moving party in its statement

"will be deemed to be admitted for purposes of the motion unless specifically controverted,"

Local Civ. R. 56.1(c), and further provides that each statement made by both the movant and

opponent "must be followed by citation to evidence" in admissible form, Local Civ. R. 56.1(d).

"The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment

motions by freeing the district courts from the need to hunt through voluminous records without

guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).  Local

Rule 56.1, however, does not relieve the party seeking summary judgment of the burden of

establishing that it is entitled to judgment as a matter of law.  *Id.*  Thus, the Court may not rely

solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement;

it also must be satisfied that the moving party's assertions are supported by the record.  *See*

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320, 329 n.12 (S.D.N.Y. 2005).

Moreover, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Rather than rely on the parties' respective Local Rule 56.1 statements, a court "may in its discretion opt to 'conduct an assiduous review of the record.'" *Id.*; *see also Pensionsversicherungsanstalt v. Greenblatt*, 556 F. App'x 23, 25 (2d Cir. 2014) (Summary Order) (noting that "nothing requires a district court to deem evidence admitted, or grant summary judgment, simply because a non-movant fails to comply with local rules such as Local Rule 56.1").

### B.    Discrimination Claims Under the ADEA

The ADEA makes it unlawful for a covered employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *See* 29 U.S.C. § 623(a)(1); *McCormack v. IBM*, 145 F. Supp. 3d 258, 265-66 (S.D.N.Y. 2015). A covered "employer," for purposes of the ADEA, must have "twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" preceding the date of the unlawful discrimination. 29 U.S.C. § 630(b); *see Guadagno v. Wallack Adler Levithan Assoc.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996.) The ADEA does not provide for individual liability. *See Peres v. Oceanside Union Free School Dist.*, 426 F. Supp. 2d 15, 22 (E.D.N.Y. 2006) (noting that plaintiff's ADEA claims against individual defendant failed as a matter of law since the ADEA does not provide for individual liability, and collecting cases).

A plaintiff may establish a claim under the ADEA by showing that he or she has suffered an adverse employment action under circumstances giving rise to an inference of discrimination on the basis of age. *DeFreitas v. TheraCare*, No. 15–CV–3627 (JG)(CLP), 2015 WL 4488077, at *2 (E.D.N.Y. Jul. 23, 2015) (citing *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). An "adverse employment action" is a "materially adverse change in the terms and conditions of employment," *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks and citations omitted), and may be "indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation,'" *id.* at 640; *see also Todoverto v. McDonald*, No. 13cv4922 (JCM), 2016 WL 3826281, at *8 (S.D.N.Y. July 7, 2016); *Boonmalert v. City of New York*, No. 16cv4171 (KMW)(KNF), 2017 WL 1378274, at *3 (S.D.N.Y. Apr. 12, 2017). To constitute an adverse action, the change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya*, 202 F.3d at 640 (internal quotation marks and citation omitted).

A plaintiff's ADEA claim that he or she has been subject to an adverse employment action on the basis of age is analyzed under the familiar burden-shifting framework that was first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in the context of discrimination claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"). *See, e.g.*, *Cappelli v. Jack Resnick & Sons, Inc.*, No. 13cv3481 (GHW), 2016 WL 958642, at *7 (S.D.N.Y. Mar. 8, 2016) (citing *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012)). Under this framework, in order to establish a *prima facie* case of employment discrimination, a plaintiff must show that:

(1) he or she belonged to a protected class; (2) he or she was qualified for the job in question; (3) the employer took an adverse employment action against him or her; and (4) the adverse action took place "under circumstances giving rise to an inference of . . . discrimination." *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).

At the summary judgment stage, the burden of proof that a plaintiff must meet to make out a *prima facie* case is *de minimis*. *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 94 (2d Cir. 2001).

> In determining whether the plaintiff has met the *de minimis* initial burden of showing circumstances giving rise to an inference of discrimination, the function of the court on a summary judgment motion is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.

*Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995) (internal quotation marks and citation omitted).

If the plaintiff makes this *de minimis* showing, then a presumption of unlawful discrimination is created, and the employer must articulate some legitimate, non-discriminatory reason for the challenged employment decision. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *Cappelli*, 2016 WL 958642, at *7. If the employer articulates such a reason, then the presumption of discrimination disappears, *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000), and "the [employee's] admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the [employer's] employment decision was more likely than not based in whole or in part on discrimination," *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (per curiam) (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

C.      **Discrimination Claims Under the NYSHRL and the NYCHRL**

Both the NYSHRL and NYCHRL also prohibit discriminatory conduct.  *See* N.Y. Exec.

Law § 296.3-a; N.Y. City Admin. Code § 8-107(1)(a); *see also Colon v. Trump Int'l Hotel &*

*Tower*, No. 10cv4794 (JGK), 2011 WL 6092299, at *4 (S.D.N.Y. Dec. 7, 2011).  As a general

matter, age-discrimination claims brought pursuant to the NYSHRL and the NYCHRL are

"subject to the same analysis as claims brought under the ADEA."  *Abdu-Brisson v. Delta Air*

*Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *see also Pearson v. Bd. of Educ.*, 499 F. Supp. 2d

575, 596 (S.D.N.Y. 2007); *Tongring v. Bronx Cmty. College of the City Univ. of N.Y. Sys.*, No.

12cv6854 (ALC)(FM), 2014 WL 463616, at *6 (S.D.N.Y. Feb. 4, 2014).

In addition, unlike the ADEA, liability under both the NYSHRL and the NYCHRL may

extend to individuals, although the test for individual liability differs, as between the State and

City law.  Under the NYSHRL, individual liability may be imposed if (1) a defendant has an

ownership interest in the employer or, alternatively, has the authority to hire or terminate its

employees; or (2) if a defendant aided and abetted the unlawful discriminatory acts of others.

*See Holt. v. Dynaserv Industries, Inc*., 14cv8299 (LGS), 2016 WL 5108205, at *10 (S.D.N.Y.

Sept. 19, 2016) (citing *Tomka v. Seiler Corp*., 66 F.3d 1295, 1317 (2d Cir. 1995)); *Petrisch v.*

*HSBC Bank USA, Inc*., No. 07-CV-3303 (KAM)(JMA), 2013 WL 1316712 at *21 (E.D.N.Y.

Mar. 28, 2013) (noting that an individual may be held liable under the NYSHRL if that

individual aided or abetted a primary violation).  Courts in this Circuit have held, though, that an

individual may only be held liable under the NYSHRL if that individual "actually participated in

the conduct giving rise to a discrimination claim."  *Figueroa v. RSquared NY, Inc*., 89 F. Supp.

3d 484, 493 (S.D.N.Y. 2015) (internal quotations and citations omitted).  Under the NYCHRL,

individual liability may be imposed "regardless of ownership or decision-making power," so

long as the individual defendant actually participated in the conduct giving rise to the claim.  *See*

*Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (internal

quotations and citation omitted).

## II.    DEFENDANTS' SUMMARY JUDGMENT MOTION

### A.    ADEA Coverage

As noted above, the first point that Defendants argue in their moving papers is that, based

on the number of employees who worked at the restaurant during the relevant period (a number

they represented was fewer than 20), the restaurant cannot be considered to have been an

"employer" under the ADEA for that period, and hence was not covered by the statute.  (*See* Def.

Mem., at 5-6.)  After reviewing Plaintiff's opposition, however, Defendants have conceded on

reply that, by way of her Affidavit (attesting that she was aware of approximately 25 workers at

the restaurant), Plaintiff has raised a sufficient issue of fact on this point to preclude summary

judgment in Defendants' favor.  (*See* Def. Reply Mem., at 1 ("Without conceding the accuracy

of [Plaintiff's] assertion, Defendants recognize that Plaintiff's Affidavit is sufficient to create a

genuine disputed issue of material fact, as to whether the restaurant had twenty or more

employees during the relevant time period, precluding summary judgment on the ground of lack

of subject matter jurisdiction").)  The Court agrees that the number of employees at the

restaurant, during the relevant time, is genuinely disputed, and thus Defendants' initial request

for summary judgment on Plaintiff's ADEA claims, based on the asserted lack of statutory

coverage, must be denied.

Nonetheless, the Court finds, *sua sponte*, that a different ADEA coverage problem is

presented by Plaintiff's claims – specifically, to the extent Plaintiff seeks to assert ADEA claims

against individual defendants, the statute does not permit her to do so.  *See, e.g., Mohamed v.*

*NYU*, No. 14cv8373 (GBD)(MHD), 2015 WL 3387218, at *31 (S.D.N.Y. May 21, 2015) (noting that numerous courts have dismissed claims under the ADEA against individual defendants, as that statute does not afford individual liability, and collecting cases), *report and recommendation adopted*, 2015 WL 5307391 (Sept. 10, 2015).  Accordingly, Plaintiff's ADEA claims against defendants Weng, Gu, and Lin are dismissed on that basis.

 **B.**  **Plaintiff's Claims Against Shanghai Café**

 With respect to the arguments that Defendants have raised – *i.e.*, regarding Plaintiff's ability to make out a *prima facie* case of age discrimination – the claims that Plaintiff has asserted against defendant Shanghai Café under the NYSHRL and the NYCHRL should be analyzed in the same way as her ADEA claims.  Accordingly, to the extent Plaintiff's ADEA claims against Shanghai Café survive summary judgment, her state and local law claims survive as well.

   **1.**  **Discriminatory Terms and Conditions of Employment**

 Defendants argue, on their motion, that Plaintiff's alleged denial of "side work" cannot be considered an "adverse employment action" (Def. Mem., at 9), and, based on the submitted record, that argument is persuasive.

 As noted above (*see* Background, *supra*, at Section A(2)), the only allegation made by Plaintiff that she was subjected to discriminatory "terms and conditions" of employment seems to be that she was denied so-called "side work" on the basis of her age.  (Compl. ¶ 31.)  Plaintiff, however, has not offered any evidence in admissible form to suggest that the denial of side work represented a material alteration in the terms and conditions of her employment, such that it rose to the level of an adverse employment action.  On this point, Plaintiff has offered nothing to demonstrate that the denial of side work materially affected her wages.  Nor has she offered any

evidence that, had the side work been assigned to her, it would have constituted such a

significant portion of her work that it would have meaningfully changed the nature of her

position – or that it was such desirable work that its denial represented more than a "mere

inconvenience." *Galabya*, 202 F.3d at 640.  Indeed, in an interrogatory response, Plaintiff

indicated only that "[d]oing side jobs" was "like a rest" for the workers who were so engaged

(Chong Decl., Ex. F (response to Interrogatory No. 11); Troy Decl., Ex. 4 (same)), suggesting

the work was merely less strenuous or active than the servers' regular work of waiting tables.

This is hardly enough to show that the denial of the opportunity to engage in "side jobs"

represented a material loss of employment benefits, and, in any event, Plaintiff's interrogatory

response is unsworn.  Where interrogatory responses are not verified, as required by

Rule 33(b)(3) of the Federal Rules of Civil Procedure, they cannot be relied upon to oppose

summary judgment.  *See Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273

(2d Cir. 1968); *see also Cavanagh v. Ford Motor Co.*, No. 13cv4584 (JS) (SIL), 2017 WL

2805057, at *7 (E.D.N.Y. June 9, 2017) (holding that unverified answers to interrogatories

cannot "create a genuine issue of material fact that would allow Plaintiffs to survive summary

judgment").

  Moreover, Plaintiff has not offered any evidence capable of raising an inference that side

work was assigned on a discriminatory basis.  Weng, who states in her Affidavit that she was

responsible for assigning the side work, also states that she did not take age into account in

making such assignments (Weng. Aff. ¶ 18), and Plaintiff has offered no evidence whatsoever to

refute this.  Although Plaintiff alleges in her Complaint that both she and Yu (who were both

over 40) were denied this type of work (Compl. ¶ 31), and has stated in her unsworn

interrogatory response that "only young wait staff" were assigned to perform it (Chong Decl.,

Ex. F (response to Interrogatory No. 11); Troy Decl., Ex. 4 (same)), Plaintiff's Complaint does not itself constitute evidence, and, as explained above, neither does her unsworn interrogatory response. Thus, the record, as it stands, contains no admissible evidence of circumstances from which an inference of discrimination could be drawn.

Finally, the Court notes that, in her memorandum of law in opposition to Defendants' summary judgment motion, Plaintiff has said nothing at all on the subject of the deprivation of side work. This, combined with the fact that Plaintiff has made no mention of this issue in her submitted Affidavit, leads the Court to conclude that she is no longer seeking to proceed in this case on a claim premised on the allegedly discriminatory denial of side work. *See Jackson v. Federal Exp.*, 766 F.3d 189, 197-98 (2d Cir. 2014) ("in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned").

Accordingly, to the extent Plaintiff's Complaint includes federal, state, or local claims against Shanghai Café on the basis of allegedly discriminatory "terms and conditions" of her employment, Shanghai Café is entitled to summary judgment, dismissing such claims.

## 2. **Discriminatory Termination**

With respect to her claim of discriminatory termination, Defendants argue that Plaintiff's claims against Shanghai Café must fail, as (a) Plaintiff cannot show that she was actually fired (and thus suffered an adverse employment action), and (b) even if she can raise an issue of fact as to whether her employment was terminated, she nonetheless cannot show that the claimed termination occurred under circumstances capable of giving rise to an inference of age discrimination. In this instance, Defendants' arguments are unavailing.

a.   **Adverse Employment Action**

The parties dispute whether Plaintiff's employment was terminated or she left her job at Shanghai Café voluntarily.  If a reasonable jury could find, from the presented evidence, that Plaintiff was either fired outright or was constructively discharged, then, at this stage, Plaintiff has done enough to satisfy the "adverse employment action" element of a *prima facie* case.  *See Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (noting that either an "actual termination of [a] plaintiff's employment by the employer or a 'constructive' discharge" is an adverse employment action); *see also Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 299 (S.D.N.Y. 2009) (same).  When proceeding on a "constructive discharge" theory, a plaintiff must be able to show that his or her "employer deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'"  *Stetson*, 995 F.2d at 360.

Through her sworn Affidavit, Plaintiff has introduced evidence that, both before and after her return from China, she tried without success to obtain assurances from Weng – who admits that she managed the waitstaff's work schedule (*see* Weng Aff. ¶ 3) – that Weng would place Plaintiff back on that schedule (*see* Pl. Aff. ¶¶ 7, 8, 11, 12).  As part of this narrative, Plaintiff states, and Defendants do not dispute, that she returned to the United States on March 8, 2016, and informed Weng, at that time, of her return.  (*See* Def. 56.1 Stmt. ¶ 20; Pl. Aff. ¶ 8; *see also* Pl. Dep., at 15:19-21, 20:21.)  Further, although Weng states that the workers who were hired as replacements for Plaintiff while she was away were each informed that they were only being hired on a "temporary" basis, to work only during Plaintiff's absence (Weng Aff. ¶ 13), Defendants do not dispute that, despite Weng's apparent knowledge of Plaintiff's return the previous week, Weng still placed one or more of the replacement employees on the work

schedule, instead of Plaintiff, for the week of March 14, 2016 (*see id.* ¶ 15).  In addition, although Weng gives a different account, Plaintiff has attested to the fact that, when she went to the restaurant on March 14, 2016 to confirm, in person, that she was being placed back on the work schedule, Weng simply told her, "No, I did not schedule you.  You go and sue me."  (Pl. Aff. ¶ 12.)

In addition, Plaintiff has submitted an Affidavit from Yu, in which Yu attests to the fact that, shortly before Plaintiff spoke with Weng on March 14, both Lin and Gu stated, in substance, that Plaintiff would not be brought back to work.  (Yu Aff. ¶¶ 15 (recounting Lin's statement that "We do not keep her anymore."), 17 (recounting Gu's statement that "Now we continue to employ young employees only, not the old ones anymore.").)  While Defendants state that these statements are inadmissible hearsay, and thus cannot be considered on summary judgment (*see* Def. Reply Mem., at 7; *see also First City Federal Sav. Bank v. Bhogaonker*, 684 F. Supp. 793, 798 (S.D.N.Y. 2988) (noting that, in opposing summary judgment, "a party may not rely on hearsay" (citing *Schwimmer v. Sony Corp. of America*, 637 F.2d 41, 45 n. 9 (2d Cir. 1980))), the statements could be considered non-hearsay party admissions by Shanghai Café, if Lin and Gu were found to have been agents of the company, speaking on a matter within the scope of their agency, *see* Fed. R. Evid. 801(d)(2).[13]  Even if, as discussed below (*see*

---

[13] Defendants' argument that the statements recounted by Yu are "double hearsay" (Def. Reply Mem., at 7) has no merit.  Statements made by an affiant on personal knowledge are considered to be in admissible form for summary judgment purposes.  *See Intellectual Prop. Watch v. United States Trade Representative*, 344 F. Supp. 3d 560, 578 n.11 (S.D.N.Y. 2018) ("As the Court reads the declarations, the declarants are testifying to their own understanding, and such affidavits are admissible as non-hearsay under Federal Rule of Civil Procedure 56.").  Thus, to the extent Yu is attesting to statements of which she has personal knowledge, her recounting of the statements would not, itself, be hearsay.  Further, as noted above, to the extent the recounted statements were against Shanghai Café's interest and were made by one or more persons speaking in a representative capacity, that would not be hearsay either.

Discussion, *infra*, at Section II(C)), the evidence offered by Plaintiff is insufficient to support her assertions that Lin was an owner or operator of the restaurant, Gu has conceded that he was an owner and manager (Gu Aff. ¶¶ 1, 3), and thus his reported statement, if credited, could potentially be considered an admission by Shanghai Café that Plaintiff's employment was being terminated.

If a jury were to credit Plaintiff's testimony and Gu's statement, and draw all inferences from that evidence in Plaintiff's favor, it could reasonably find that Plaintiff's employment was terminated.  A termination of employment must be made through an official act of the employer, *see Wilkins v. Time Warner Cable, Inc.*, 10 F. Supp. 3d 299, 310 (N.D.N.Y. 2014) (noting that, under *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 766 (1998), a tangible employment action requires an "official act" of the enterprise), and, here, Weng's purported statements to Plaintiff – conveying that Plaintiff was not being scheduled for work, and that she should leave the premises and seek legal remedies, if she wished – could reasonably be viewed as communicating to Plaintiff that she was no longer welcome to be an employee of Shanghai Café.

Moreover, a reasonable jury could interpret the existing record to evidence a constructive discharge.  "Unlike an actual termination, which is always effected through an official act of the company, a constructive discharge need not be."  *Pa. State Police v. Suders*, 542 U.S. 129 (2004); *Wilkins*, 10 F. Supp. 3d at 311.  Generally, in determining constructive discharge, the work atmosphere must be intolerable, such that the plaintiff was forced to quit involuntarily. *Stetson*, 995 F.2d at 360.  Work conditions are assessed objectively by reference to a reasonable person in the employee's position.  *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 257 (S.D.N.Y 2014); *Nakis v. Potter*, 422 F. Supp. 2d 398, 411-12 (S.D.N.Y. 2006).  In this instance, the work "atmosphere" is not at issue the way it might be, more typically, in a constructive

discharge case.  Still, Plaintiff's Affidavit provides an account of Weng's conduct as brusque and dismissive, and this account, coupled with the comment of Gu (that Plaintiff says had been relayed to her by Yu), could lead a jury to draw the inference that Plaintiff reasonably understood that she was being denied work, such that she felt "compelled to resign."  *See Fulmore v. Home Depot, U.S.A., Inc.*, 423 F. Supp. 2d 861, 879 (S.D. Ind. 2006) ("A jury could find that a reasonable person, facing a significant reduction in assigned work hours, would feel compelled to resign and find another job.").

While, at trial, a jury might alternatively conclude that Defendants did *not* actually intend to terminate Plaintiff's employment, or that Plaintiff lacked justification in treating her encounter with Weng as a constructive discharge, Plaintiff has at least raised a genuine triable issue as to the circumstances in which she parted company with Shanghai Café, and as to whether those circumstances may be found to have been an "adverse employment action."[14]

**b.  Circumstances Giving Rise to
an Inference of Discrimination**

Plaintiff has also satisfied her *de minimus* burden, on summary judgment, of coming forward with evidence of circumstances "that would be sufficient to permit a rational finder of fact to infer a discriminatory motive."  *Cronin*, 46 F.3d at 204.

A plaintiff can demonstrate "a variety of circumstances" that may give rise to an inference of discrimination.  *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009); *see*

---

[14] In their moving papers, Defendants also briefly argue, in a cursory fashion, that, if Plaintiff could show that she had actually been fired, then the restaurant's decision to terminate her employment would have been justified by the "legitimate business reason" that the restaurant needed to hire a replacement worker to ensure that it "would be fully staffed."  (Def. Mem., at 9.) Given, however, that Weng has sworn that any replacement workers were hired with the express representation that they would be working on a "temporary" basis, only while Plaintiff was absent (Weng Aff. ¶ 13), Defendants would be hard pressed to argue that they had a legitimate, non-discriminatory reason for not letting Plaintiff return.

*also Valle v. City of New York*, 11cv8148 (DLC), 2013 WL 444763, at *4 (S.D.N.Y. Feb. 6,

2013).  These can include, but are not limited to, "a plaintiff's replacement by a significantly

younger person," *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000), and

"comments or remarks evidencing ageist views," *Del Valle*, 2013 WL 444763, at *4; *see also*

*Hird-Moorhouse v. Belgian Mission to the United Nations*, No. 03cv9688, 2010 WL 3910742,

at *4 (S.D.N.Y. Oct. 5, 2010) (holding that plaintiff's replacement by a significantly younger

person and alleged comments by plaintiff's supervisor that defendant needed a "younger image"

and plaintiff was "too old for her job" gave rise to an inference of discrimination); *Sandvik v.*

*Sears Holding/Sears Home Improvement Prods., Inc.*, No 12-CV-2096 (JFB) (GRB), 2014 WL

24225, at *15 (E.D.N.Y. Jan. 2, 2014) (finding that younger replacements of plaintiff and ageist

comments supported an inference of discrimination).

　　　　While the fact that a plaintiff was hired while he or she was part of the protected age

group, or that others in the protected group were not similarly subjected to adverse action, may

"undercut[] the inference of age discrimination," *Boyle v. McCann-Erickson, Inc.*, 949 F. Supp.

1095, 1104 (S.D.N.Y. 1997); *Pierce v. Gareb Shamus Enters.*, No. 09–CV–1564 (SLT)(VVP),

2013 WL 1344963, at *6 (E.D.N.Y. Mar. 29, 2013); *Colon*, 2011 WL 6092299, at 7, the Court

should view the totality of the evidence presented, in determining whether a plaintiff has put

forward enough to make out a *prima facie* case of discrimination.

　　　　Here, Plaintiff has submitted a sworn statement from Yu, in which Yu attests to having

observed "two new young waitresses in their 20s who were replacements for [Plaintiff]" in

March 2016.  (Yu Aff. ¶ 11.)  Defendants concede that replacement waitresses were, in fact,

hired while Plaintiff was in China (*see* Weng Aff. ¶ 13), and nowhere refute that the

replacements were significantly younger than Plaintiff, who was in her fifties at the time of her

claimed termination (Pl. Dep., at 35:4-5).  This supports an inference of discrimination.  *Hall v. North Bellmore School Dist.*, 55 F. Supp. 3d 286, 297 (E.D.N.Y. 2014) (a reliable indicator of age discrimination is when a plaintiff's replacement is significantly younger than the plaintiff).

Second, Plaintiff has proffered two comments by others, suggesting that she was replaced because of her age.  Both of these comments were made close in time to the date of her purported termination, a relevant factor.  *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 163 (2d Cir. 1998) (finding comment by company spokesman to support an inference of discrimination where the comment occurred "close to the time of [plaintiff's] discharge").  While one of these statements (the purported statement by Chang that "the bosses didn't want [Plaintiff] because [she was] too old" (Pl. Aff. ¶ 9)) is inadmissible hearsay, and thus insufficient to give rise to an inference of discrimination, *see, e.g.*, *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 646 (S.D.N.Y. 2013), the other (the purported statement of Gu that "[n]ow we continue to employ young employee only, not the old ones anymore" (Yu Aff. ¶ 17)) is arguably *not* hearsay, as already discussed.

Not only may Gu's statement be admissible against Shanghai Café, but, on its face, it directly sets out a discriminatory reason for Plaintiff's claimed termination.  The statement was reportedly made in the context of a conversation that was specifically about Plaintiff's potential return to work.  (*See* Yu Aff. ¶¶ 11-17.)  Further, although Defendants contend that Gu played no personal role in hiring or firing the restaurant's waitstaff (*see* Gu Aff. ¶ 4; Weng Aff. ¶ 4), the statement itself – framed as "*we* continue to employ young employee[s] only" – could be interpreted to mean that, at the time, Gu was in fact playing a role in the restaurant's overall hiring and firing decisions, or was at least well aware that a decision had been made to favor younger waitresses.  While a discriminatory comment by a person who had no involvement, at all, in the adverse employment action at issue may not suffice to create an inference of

discrimination, *see Boyle*, 949 F. Supp. at 1102; *see also Khan v. Abercrombie & Fitch, Inc.*,

No. 01cv6163 (WHP), 2003 WL 22149527, at *7 (S.D.N.Y. Sept. 16, 2003), the record in this

case could support that, at a minimum, Gu had knowledge of decisions that had been made,

sufficient to allow Plaintiff to rely on Gu's reported statement as evidence of the company's

discriminatory intent.

To be sure, there is also evidence in the record that would tend to counter any inference

of discrimination.  Defendants particularly note that, despite Yu's similarity in age to Plaintiff,

Yu continued to work at Shanghai Café (Def. Reply Mem., at 7; *see also supra*, at n.9), and also

note that, in discovery, Defendants identified six other employees of the restaurant (including

two waiters and one waitress) who were over the age of 40 and whose employment was not

terminated (Def. Mem., at 9; Def Reply Mem., at 6; Weng Aff. ¶ 19; *see also supra*, at n.9).

These facts, however, are not dispositive.  *See, e.g.*, *Silver v. N. Shore Univ. Hosp.*, 490 F. Supp.

2d 354. 364-65 (S.D.N.Y. 2005) (denying defendant's motion for summary judgment on

plaintiff's age-discrimination claim, even where evidence showed that defendant employer

continued to employ several individuals who were plaintiff's age or older).  This is especially

true here because the record contains little information regarding the circumstances of the other

workers' employment.  Plaintiff has not actually suggested that she was fired from her position at

a point when she was actively working.  Rather, she claims that she went on an approved

vacation; that, while she was away, she was replaced with one or more younger waitresses; and

that management then decided not to let her return to her position, because it preferred having

the younger replacement(s).  It is entirely unclear from Defendants' submissions whether any of

the other workers who were over 40 years of age similarly took time off from work, thereby

affording Defendants with a similar window of opportunity to hire younger replacement workers to fill their positions.

Overall, viewing the evidence in Plaintiff's favor and according her the benefit of every favorable inference, the Court finds that a reasonable juror could find that Plaintiff's employment was terminated under circumstances giving rise to an inference of discrimination.  Accordingly, to the extent Plaintiff is asserting federal, state, or local claims against Shanghai Café on the basis of an allegedly discriminatory termination, Defendants' motion for summary judgment dismissing those claims is denied.

### C.    Plaintiff's NYSHRL and NYCHRL Claims Against the Individual Defendants

For the same reasons discussed above with respect to Shanghai Café, the individual defendants – Weng, Gu, and Lin – are entitled to summary judgment dismissing any claims against them based on the purported denial of side work.  As to the individual defendants' potential liability on Plaintiff's NYSHRL and NYCHRL discriminatory-termination claims, however, further analysis is required.

#### 1.    Claims Against Weng

As Weng concedes that she had an ownership interest in Shanghai Café during the relevant period, that she was Plaintiff's supervisor, that she set Plaintiff's work schedule, and that she had hiring and firing authority over the waitstaff (Weng Aff. ¶ 3), she may be subject to personal liability on Plaintiff's NYSHRL and NYCHRL claims for discriminatory termination. *See Holt*, 2016 WL 5108205, at *10 (holding that individual liability may be imposed under the NYSHRL where the individual had an ownership interest and had the authority to hire or fire the employees; or, alternatively, had aided and abetted in the conduct giving rise to the claim of discrimination); *Malena*, 886 F. Supp. 2d at 366 (holding that individual liability may be

imposed under the NYCHRL, where the individual participated in the conduct giving rise to the discrimination claim).  Accordingly, summary judgment is denied as to Plaintiff's NYSHRL and NYCHRL discriminatory-termination claims against Weng.[15]

        **2.**        **Claims Against Gu**

Like Weng, Gu has conceded that he had an ownership interest in the restaurant during the relevant period, and, also like Weng, he has acknowledged that he had the authority to hire and fire employees.  (Gu Aff. ¶ 3.)  Both Weng and Gu maintain, however, that Gu did not exercise any supervisory authority over the waitstaff (Weng Aff. ¶ 4; Gu Aff. ¶ 4), and Plaintiff, who worked as a waitress, admits that it was Weng, and not Gu, who was her direct supervisor (Pl. Aff. ¶ 4).  Despite this, the statement by Gu that "*we* continue to employ young employee[s] only" (Yu Aff. ¶ 17 (emphasis added)) allows the reasonable inference that Gu was, in fact, playing a role in setting the restaurant's general hiring and firing policies, and may at least have aided and abetted Plaintiff's claimed termination.  Given the evidence that Gu had an ownership interest in the restaurant, had the authority to terminate employees, and may have participated in the alleged discriminatory conduct, triable issues of fact also preclude summary judgment on the discriminatory-termination claims that Plaintiff has asserted against Gu under the NYSHRL and NYCHRL.  *See Villar v. City of New York*, 135 F. Supp. 3d 105, 144 (S.D.N.Y. 2015) (denying

---

[15] Neither party has addressed the question of whether, if Plaintiff's ADEA claims against the individual defendants are dismissed, the Court should retain jurisdiction over Plaintiff's NYSHRL and NYCHRL claims against those defendants, assuming the claims would otherwise survive summary judgment.  The Court notes, however, that, especially at this late stage, and in view of the related case against Defendants that is also before the Court, it is permissible and appropriate for it to continue to exercise supplemental jurisdiction over Plaintiff's State and City claims, to the extent those claims are viable.  *See, e.g., Eng. v. City of New York*, 715 F. App'x 49, 54 (2d Cir. 2017) (Summary Order) (holding that district court did not err when it exercised jurisdiction over appellant's NYSHRL and NYCHRL claims, even though it had dismissed the federal claim, as the claims arose out of a common nucleus of operative fact).

summary judgment on NYCHRL claim, where individual defendant's actual participation in creating a hostile work environment was a triable issue of fact); *Pellegrini v. Sovereign Hotels, Inc.*, 740 F. Supp. 2d 344, 356 (N.D.N.Y. Sept. 15, 2010) (denying summary judgment where there was evidence that individual defendants actively participated in discriminatory conduct under the NYSHRL).

### 3.   Claims Against Lin

While Plaintiff alleges that Lin was "the ultimate boss," Plaintiff has not presented any evidence in admissible form to support her bare allegations that Lin had an ownership interest in the restaurant, that she played a management role at the restaurant, and that she participated in the claimed discriminatory conduct.  In the absence of any evidence to refute Lin's sworn statements to the contrary (*see* Lin Dep., at 7:19-20, 11:4-14), Lin is entitled to summary judgment dismissing Plaintiff's discriminatory-termination claims against her.  *See Mitra v. State Bank of India*, No. 03cv6331 (DAB), 2005 WL 2143144, at *4 (S.D.N.Y. Sept. 6, 2005) (holding that plaintiff failed to make out a claim under the NYSHRL and NYCHRL against two individuals who held high titles, but did not have ownership interest, the authority to make relevant personnel decisions on their own, or participated in the discriminatory acts).

### CONCLUSION

For all the foregoing reasons, Plaintiff's ADEA claims against the individual defendants are dismissed *sua sponte*, on the ground that the ADEA does not provide for individual liability. With respect to Plaintiff's remaining claims, Defendants' motion for summary judgment is granted in part and denied in part, as follows:

(1)    Summary judgment is granted, dismissing:

(a)    Plaintiff's claims alleging a discriminatory denial of "side work," as asserted against all Defendants; and

(b) all of Plaintiff's claims against defendant Lin.

(2) Summary judgment is denied as to:

(a) Plaintiff's claims for discriminatory termination, as asserted against defendant Shanghai Café under the ADEA, the NYSHRL, and the NYCHRL; and

(b) Plaintiff's claims for discriminatory termination, as asserted against defendants Weng and Gu under the NYSHRL and the NYCHRL.

The Clerk of Court is directed to close the motion filed at Dkt. 29 on the Docket of this

action. In addition, the Clerk of Court is directed to place the following Docket entries under

seal: Dkts. 28-1, 28-4, 31, 32-2, 34, and 35-4. Pursuant to Fed. R. Civ. P. 5.2, the parties are

directed to refile redacted versions of those documents that do not reveal the dates of birth of

Plaintiff or any other employees of defendant Shanghai Café.

Dated: New York, New York
       March 8, 2019

SO ORDERED

_Delia Jmz_

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All counsel (via ECF)

33