```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 3/24/2023 __
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
CINDY CHEN, on behalf of herself and all
others similarly situated,

                         Plaintiffs,

        -against-

SHANGHAI CAFÉ DELUXE, INC. d/b/a
Shanghai Café; YILI WENG, PING LIN,
and XINSHENG GU,

                     Defendants.
----------------------------------------------------X

                   **OPINION AND ORDER**

                   17-cv-2536 (VF)

**VALERIE FIGUEREDO, United States Magistrate Judge.**

       Plaintiff Cindy Chen brought this age-discrimination action on behalf of herself and others similarly situated against Defendants Shanghai Café Deluxe, Inc. ("Shanghai Café"), Yili Weng, Ping Lin, and Xinsheng Gu (collectively, "Defendants"). Chen alleges that Defendants unlawfully terminated her employment, because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the New York State Human Rights Law, N.Y. Exec. L. § 290, et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code, § 8-101 et seq. ("NYCHRL"). Before the Court is Chen's motion for default judgment. For the reasons that follow, Chen is granted default judgment against Shanghai Café on her claims for violation of the ADEA, the NYSHRL, and the NYCHRL. Chen is also granted default judgment against Weng and Gu for her claims under the NYSHRL and the NYCHRL. Additionally, judgment is entered against Defendants Shanghai Café, Yili Weng, and Xinsheng Gu for damages and attorneys' fees in the amounts outlined herein.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Cindy Chen, a 54-year-old woman, was employed by Shanghai Cafe as a waitress from April 15, 2012, to January 26, 2016. See Compl., ¶¶ 8, 27, ECF No. 1. Defendant Shanghai Cafe is a New York State corporation, with 20 or more employees, located at 100 Mott Street in New York, New York. See Compl. ¶¶ 10, 14. Shanghai Cafe is a restaurant that is "engaged in interstate commerce" with gross sales exceeding $500,000 per year. See id. at ¶¶ 11-12. Throughout the relevant period, the owners and operators of Shanghai Café—individual defendants Yili Weng, Ping Lin, and Xinsheng Gu—supervised Chen and had the power to hire and fire employees of the restaurant. See id. at ¶¶ 16-26.

Chen was on vacation in China between January 26, 2016, and March 8, 2016. Id. ¶ 34. Upon her return to the United States, Chen contacted Defendant Weng to let her know that she was ready to return to work. Id. ¶ 35. On March 12, 2016, another employee of the restaurant (also named Chen) called Chen to tell her that Defendants Weng, Lin, and Gu "decided they only wanted young waitresses, and that [Chen] would not be able to return to work." Id. ¶ 36. The following day, March 13, Chen called the restaurant to ask if she had been added back to the work schedule. Id. ¶ 37. Weng told Chen that she was "busy" and would call her back that night. Id. Weng did not call Chen back. Id. Chen was later told by another waitress at Shanghai Café that Defendants Ling and Gu had said they "only want young waitstaff." Id. ¶ 38. On March 14, 2016, Chen was told by Weng that her employment was terminated. Id. ¶ 39.

Chen filed her complaint, which she characterized as a putative class action, on April 9, 2017. See ECF No. 1. In her complaint, Chen alleges that she filed a claim of discrimination with

---

[1] The facts recounted here are established by the allegations in the complaint, which are deemed admitted except as to damages, because of Defendants' default. See Finkel v. Romanowicz, 577 F.3d 79, 81-84 (2d Cir. 2009).

the Equal Opportunity Employment Commission on June 24, 2016, and received a right to sue notice on March 10, 2017. Id. ¶¶ 4-5; see also ECF No. 2 (Notice of Right to Sue). Defendants Shanghai Café, Weng, Lin, and Gu filed an Answer on June 26, 2017. See ECF No. 14. On July 17, 2017, the parties consented to the undersigned's jurisdiction for all proceedings. See ECF No. 18. The parties engaged in discovery, see, e.g., ECF No. 22, at the close of which Defendants moved for summary judgment, seeking dismissal of all of Chen's claims, see ECF No. 29.

In an opinion and order dated March 8, 2019, the Court granted Defendants' motion for summary judgment in part and denied it in part. See ECF No. 43. The Court dismissed *sua sponte* Chen's ADEA claims against the individual defendants, "because the ADEA does not provide for individual liability." See ECF No. 43 at 2, 19-20. The Court also granted summary judgment to defendant Lin, dismissing all of Plaintiff's claims against Lin. Id. at 32. Additionally, the Court granted summary judgment to all Defendants on Chen's ADEA, NYSHRL, and NYCHRL claims, to the extent those claims relied on the alleged existence of discriminatory terms and conditions of employment. Id. at 20-22, 30. However, the Court denied summary judgment to the extent it sought dismissal of Chen's ADEA, NYSHRL, and NYCHRL claims based on discriminatory termination due to her age. Id. at 22-30. And, the Court also denied summary judgment as to individual defendants Weng and Gu for Chen's claims of discriminatory termination under the NYSHRL and the NYCHRL. Id. at 30-32. Consequently, following the Court's summary judgment decision, defendant Lin was dismissed from the case; Plaintiff's claims against Shanghai Café under the ADEA, the NYSHRL, and the NYCHRL for discriminatory termination remained in the case; and Plaintiff's claims against Weng and Gu for

discriminatory termination in violation of the NYSHRL and the NYCHRL also remained in the case.

On January 29, 2020, counsel for Defendants, Michael K. Chong, moved to withdraw as counsel for all Defendants. See ECF Nos. 55-57. On March 18, 2020, the Court granted Chong's motion to withdraw as counsel, and gave Defendants 30 days to obtain new counsel. See ECF No. 68, Minute Entry dated Mar. 18, 2020. By July 20, 2020, Defendants had not yet retained new counsel, and the Court instructed Plaintiff that it could move for the entry of default judgment by September 4, 2020. See ECF No. 86. Defendants were served with a copy of the Court's order on August 13, 2020. See ECF No. 87.

The Clerk of Court issued a Certificate of Default for Shanghai Café and against the individual defendants on September 18, 2020. See Cert. of Default, ECF Nos. 96-99. On September 18, 2020, Chen filed a motion for default judgment. See ECF Nos. 100-07. On July 7, 2021, the Court denied without prejudice Chen's motion for default judgment. See ECF No. 112, Minute Entry dated July 7, 2021. On December 21, 2022, Chen renewed her motion for default judgment and for an award of damages, and also filed a motion for attorneys' fees. See ECF Nos. 118-22. Defendants were served with these filings on December 22, 2022. See ECF No. 123. To date, Defendants have not filed any opposition to the motion for default judgment, motion for attorneys' fees, or Chen's damages submissions. Defendants have also not taken any action in this case, or otherwise appeared, since the entry of the Clerk's Certificate of Default in September 2020.

## DISCUSSION

In light of Defendants' default, the Court accepts as true the well-pleaded allegations in the Complaint, with the exception of those allegations relating to damages. See, e.g., Union of

Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must accept as true all of the factual allegations of the complaint, but the amount of damages are not deemed true.") (internal citations, alterations, and quotation marks omitted). As to damages, a district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). This inquiry requires the district court to: (1) "determin[e] the proper rule for calculating damages on . . . a claim" and (2) "assess[ ] plaintiff's evidence supporting the damages to be determined under this rule." Id.

Federal Rule of Civil Procedure 55(b)(2) "allows but does not require" the district court to conduct a hearing on the damages amount. Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) ("[T]he court may conduct such hearings or order such references as it deems necessary and proper.") (citation and internal quotation marks omitted); see also Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found, Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). Chen's submissions have not been contested, and the submissions provide all the information needed to determine her damages. As such, a hearing on the damages inquest is not necessary.

## A. Liability under the ADEA, NYSHRL, and NYCHRL

### 1. Chen's age-discrimination claim under the ADEA

Although Chen's complaint included an age-discrimination claim under the ADEA against all Defendants, the Court previously dismissed the ADEA claims against the individual defendants, because the ADEA does not provide for individual liability. See Peres v. Oceanside

Union Free School Dist., 426 F. Supp. 2d 15, 22 (E.D.N.Y. 2006) (noting that ADEA claims against individual defendant failed as a matter of law because the ADEA does not provide for individual liability) (collecting cases). See ECF No. 43 at 2, 19-20. As such, the only remaining ADEA claim is against the corporate defendant, Shanghai Café.

The ADEA makes it unlawful for a covered employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." See 29 U.S.C. § 623(a)(1); McCormack v. IBM, 145 F. Supp. 3d 258, 265-66 (S.D.N.Y. 2015). A covered "employer," for purposes of the ADEA, must have "twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" before the date of the unlawful discrimination. 29 U.S.C. § 630(b); see Guadagno v. Wallack Adler Levithan Assoc., 932 F. Supp. 94, 95 (S.D.N.Y. 1996).

A plaintiff may establish a claim under the ADEA by showing that she has suffered an adverse employment action under circumstances giving rise to an inference of discrimination on the basis of age. DeFreitas v. TheraCare, No. 15-CV-3627 (JG)(CLP), 2015 WL 4488077, at *2 (E.D.N.Y. Jul. 23, 2015) (citing Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010)). An "adverse employment action" is a "materially adverse change in the terms and conditions of employment," Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citations and internal quotation marks omitted), and may be "indicated by a termination of employment," id. at 640. See also Todoverto v. McDonald, No. 13-CV-4922 (JCM), 2016 WL 3826281, at *8 (S.D.N.Y. July 7, 2016); Boonmalert v. City of New York, No. 16-CV-4171

(KMW)(KNF), 2017 WL 1378274, at *3 (S.D.N.Y. Apr. 12, 2017), aff'd, 721 F. App'x 29 (2d Cir. 2018).

A plaintiff's ADEA claim that she has been subject to an adverse employment action on the basis of age is analyzed under the familiar burden-shifting framework that was first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in the context of discrimination claims brought under Title VII of the Civil Rights Act of 1964. See, e.g., Cappelli v. Jack Resnick & Sons, Inc., No. 13-CV-3481 (GHW), 2016 WL 958642, at *7 (S.D.N.Y. Mar. 8, 2016) (citing Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012)). Under this framework, in order to establish a prima facie case of employment discrimination, a plaintiff must show that: (1) she belonged to a protected class; (2) she was qualified for the job in question; (3) the employer took an adverse employment action against her; and (4) the adverse action took place "under circumstances giving rise to an inference of . . . discrimination." Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (citation and quotation marks omitted).

If the plaintiff makes this de minimis showing, then a presumption of unlawful discrimination is created, and the employer must articulate some legitimate, non-discriminatory reason for the challenged employment decision. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Cappelli, 2016 WL 958642, at *7. If the employer articulates such a reason, then the presumption of discrimination disappears, see St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citations omitted), and "the [employee's] admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the [employer's] employment decision was more likely than not based in whole or in part on discrimination," Kirkland v.

Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014) (per curiam) (citing Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)).

Chen's First Cause of Action asserts a claim for employment discrimination based on age under the ADEA. Compl. ¶¶ 42-46. To support that claim, the Complaint has the following well-pled allegations, which are accepted as true given Shanghai Café's default. First, the Complaint alleges that Shanghai Café has 20 or more employees, as required for application of the ADEA. Compl. ¶ 14. Second, Chen alleges that she is 54 years old and worked as a waitress at Shanghai Café for over three years. Compl. ¶¶ 8, 27. Chen thus belonged to a protected class and was qualified to work as a waitress. Third, Chen alleges that she was terminated in March 2016. Compl. ¶ 39. Her termination is sufficient to constitute an adverse employment action.

Finally, Chen alleges that she was told by another waitress that defendants Weng, Lin and Gu, who supervised employees at Shanghai Café and had the power to hire and fire employees, said on March 12, 2016, that they "only wanted young waitresses" and a "young waitstaff." Compl. ¶¶ 17-19, 21-22, 25-26, 36, 38. On its face, the statement sets out a discriminatory reason for Plaintiff's termination. Further, the statement was made by the individuals at Shanghai Café charged with hiring and firing employees and it was made close in time to Chen's termination on March 14, 2016. Compl. ¶ 39. The statement is thus sufficient to establish that Chen's termination occurred under circumstances giving rise to an inference of discrimination. See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 162-64 (2d Cir. 1998) (concluding that statement, made by a "decisionmaker" at defendant close in time to plaintiff's discharge, "directly mentioning the youth or anticipated youth of the company's sales force," was sufficient to support inference that age was a factor in termination decision). Chen's allegations are therefore sufficient to make the de minimis showing required for a prima facie case of employment

discrimination. And, because Shanghai Café has defaulted, it has not articulated a legitimate,

non-discriminatory reason for the challenged employment decision and therefore has not

rebutted the presumption of discrimination that applies once a prima facie case is established.

Chen is thus entitled to damages against Shanghai Café for unlawful employment discrimination

in violation of the ADEA.

### 2. Discrimination claims under the NYSHRL and NYCHRL

Both the NYSHRL and NYCHRL also prohibit discriminatory conduct. See N.Y. Exec.

Law § 296.3-a; N.Y. City Admin. Code § 8-107(1)(a); see also Colon v. Trump Int'l Hotel &

Tower, No. 10-CV-4794 (JGK), 2011 WL 6092299, at *4 (S.D.N.Y. Dec. 7, 2011). As a general

matter, age-discrimination claims brought pursuant to the NYSHRL and the NYCHRL are

"subject to the same analysis as claims brought under the ADEA." Abdu-Brisson v. Delta Air

Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (citation omitted); see also Pearson v. Bd. of Educ.,

499 F. Supp. 2d 575, 596 (S.D.N.Y. 2007) (citations omitted); Tongring v. Bronx Cmty. College

of the City Univ. of N.Y. Sys., No. 12-CV-6854 (ALC)(FM), 2014 WL 463616, at *6 (S.D.N.Y.

Feb. 4, 2014) (citations omitted); Gorzynski, 596 F.3d at 105 n. 6 ("The law governing ADEA

claims has been held to be identical to that governing claims made under the NYHRL.") (citation

omitted).

Unlike the ADEA, liability under both the NYSHRL and the NYCHRL may extend to

individuals, but the test for individual liability differs, as between the state and city law. Under

the NYSHRL, individual liability may be imposed if (1) a defendant has an ownership interest in

the employer or, alternatively, has the authority to hire or terminate its employees; or (2) if a

defendant aided and abetted the unlawful discriminatory acts of others. See Holt. v. Dynaserv

Industries, Inc., 14-CV-8299 (LGS), 2016 WL 5108205, at *10 (S.D.N.Y. Sept. 19, 2016) (citing

Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)); Petrisch v. HSBC Bank USA, Inc.,

No. 07-CV-3303 (KAM)(JMA), 2013 WL 1316712 at *21 (E.D.N.Y. Mar. 28, 2013) (noting that

an individual may be held liable under the NYSHRL if that individual aided or abetted a primary

violation). Courts in this Circuit have held that an individual may only be held liable under the

NYSHRL if that individual "actually participated in the conduct giving rise to a discrimination

claim." Figueroa v. RSquared NY, Inc., 89 F. Supp. 3d 484, 493 (S.D.N.Y. 2015) (citations,

internal quotations marks, and alterations omitted). Under the NYCHRL, individual liability may

be imposed "regardless of ownership or decision-making power," if the individual defendant

actually participated in the conduct giving rise to the claim. See Malena v. Victoria's Secret

Direct, LLC, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (citations and quotation marks omitted).

For individual liability, the claims that remain are under the NYSHRL and the NYCHRL,

against Weng and Gu. The complaint alleges that Weng and Gu both told Plaintiff's coworker,

around March 12, 2016, that they "had decided they only wanted young waitresses," and that

statement was made close in time to Plaintiff's termination on March 14. Compl. ¶¶ 36, 38-39.

The complaint also alleges that Weng and Gu both had an ownership interest in the restaurant

and also had the power to hire and fire employees, supervise their work, and control employee

work schedules. Compl. ¶¶ 17-18, 25-26. Weng and Gu, both of whom are alleged to be owners

of the restaurant, had the power to fire employees and openly indicated that they only wanted

young waitresses working at the restaurant. Those allegations, which are credited because of

Weng's and Gu's default, establish their liability for violation of the NYSHRL and the

NYCHRL.

**B.  Plaintiff's Damages**

No party has requested a hearing on the issue of damages and Defendants have not submitted any written materials. The Court has thus conducted its inquest based solely on the materials Chen submitted in support of her request for damages. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.") (citations omitted). Plaintiff has the burden of establishing her entitlement to recovery and must do so "to a reasonable certainty." See Santiago v. Crown Heights Ctr. For Nursing & Rehabilitation, No. 15-CV-4381 (DLI) (CLP), 2017 WL 9482107, at *17 (E.D.N.Y. Feb. 24, 2017), report and recommendation adopted, 2017 WL 4410807 (E.D.N.Y. Sept. 30, 2017) (citation and quotation marks omitted). In support of her request for damages, Chen filed an affidavit attesting to the circumstances of her employment and termination, along with an affidavit from another waitress at Shanghai Café, Su Ping Yu. See ECF Nos. 120-21. Chen also submitted a memorandum of law in support her motion for default judgment and a declaration from her attorney, John Troy, in support of her request for an award of attorneys' fees and costs. ECF Nos. 119, 122. All of Plaintiff's submissions for purposes of the instant motion were served on Defendants on December 22, 2022. ECF No. 123. Defendants have not responded to Chen's motion.

*1.  Back pay*

The ADEA authorizes courts to "grant such legal or equitable relief as may be appropriate to effectuate [its] purposes," including back pay, and, in cases of willful violations, liquidated damages equal to the amount of any back pay award. 29 U.S.C. § 626(b); see also Belizaire v. RAV Investigative & Sec. Servs. Ltd., 61 F. Supp. 3d 336, 362 (S.D.N.Y. 2014). A

11

back pay award is intended "to restore the employee to the status quo [she] would have enjoyed if the discriminatory discharge had not taken place." Kirsch, 148 F.3d at 166 (citation and quotation marks omitted). Consequently, an award of back pay should be based on what the plaintiff would have earned had she not been terminated. See id. The NYSHRL and the NYCHRL also permit an award of back pay from the date of termination until the date of judgment. See Santiago, 2017 WL 9482107, at *18; Tatas v. Ali Bab's Terrace, Inc., No. 19 Civ. 10595 (ER), 2022 WL 993566, at *15 (S.D.N.Y. Mar. 31, 2022).

A plaintiff who was unlawfully terminated "has a duty to mitigate [her] damages." Press v. Concord Mortg. Corp., No. 08 Civ. 9497 (PKC) (GWG), 2009 WL 6758998, at *5 (S.D.N.Y. Dec. 7, 2009) (collecting cases); Tatas, 2022 WL 993566, at *15. "Any back pay award must be reduced by plaintiff's interim earnings." Taddeo v. Ruggiero Farenga, Inc., 102 F. Supp. 2d 197, 198 (S.D.N.Y. 2000) (citations omitted). Interim earnings are calculated for the time period between the plaintiff's firing and the entry of the court's judgment. Id. In the inquest context, courts in this District generally award back pay through the date of default judgment. See, e.g., Manson v. Friedberg, No. 08-CV-3890 (RO), 2013 WL 2896971, at *6 (S.D.N.Y. June 13, 2013); Becerril v. E. Bronx NAACP Child Dev. Ctr., No. 08-CV-10283 (PAC)(KNF), 2009 WL 2611950, at *3 (S.D.N.Y. Aug. 18, 2009), report and recommendation adopted, 2009 WL 2972992 (Sept. 17, 2009).

At the time of her termination, Chen was earning $825 per week, which was comprised of $700 in tips and a $125 flat pay. Aff. of Cindy Chen ("Chen Aff.") at ¶¶ 15, 18, ECF No. 120. Chen's employment was terminated on March 14, 2016. Id. ¶ 27. From the date of her termination until the date of this judgment, 366 weeks have elapsed. If Chen had continued

working at Shanghai Café, she would have continued earning $825 per week, or $301,950 over the 366 weeks that have elapsed since her termination.

Following her termination, Chen diligently searched for employment and started a job as a home-health aide on May 30, 2016. Chen Aff. ¶¶ 30-32. In that job, Chen earned varying hourly rates depending on the work she was performing, but her weekly pay was less than she was earning at Shanghai Cafe. Id. ¶¶ 33-34. She was employed from May 30, 2016, until August 29, 2016 as a home-health aide; Chen provides a table in her affidavit that details her weekly salary for each week she was employed as an aide. Id. ¶ 33. Her employment ended around September 4, 2016. Id. ¶ 35. During her tenure as a home-health aide, Chen earned $5,386.10. Id. ¶ 33. From that date until March 5, 2017, Chen again diligently searched for a new job. Id. ¶ 36.

On March 6, 2017, Chen began a new job at a nail salon. Id. ¶ 37. Chen earned an hourly wage of $7.55 and worked 24 hours per week; she also earned $80-$90 per week in tips. Id. ¶¶ 38-39. On average, Chen thus earned $266 per week at New Shiny.[2] Chen worked at New Shiny Nail Salon approximately 11 weeks, until May 21, 2017. Id. ¶ 41. During the last two weeks of her employment at New Shiny, Chen worked 30 hours each week and earned about $105 per week in tips (for a total gross pay of $331.50 per week). Id. ¶¶ 38-39. Chen thus earned a total of $3,057 during her time at New Shiny.[3]

---

[2] Chen's hourly wages per week were $181.20 ($7.55 multiplied by 24 hours). To that wage, the Court added $80 and $90, because Chen earned approximately that in tips each week. Chen thus earned between $261 and $271 weekly at New Shiny. To calculate her average weekly pay, the Court added $261 and $271 and divided by 2.

[3] During the last two weeks of her employment at New Shiny, Chen earned $663. And she earned $266 per week for the nine weeks prior, totaling $2,394 for those nine weeks. Chen thus earned $3,057 during her 11 weeks at New Shiny.

On June 4, 2017, Chen began a new job at New Fabulous Nail & Spa. Id. ¶ 42. She worked there between June 4 and July 30, 2017, except for a two-week period when she did not work. Id. ¶¶ 44, 47. Chen thus worked at New Fabulous for six weeks. At New Fabulous, Chen earned $8 per hour and was paid for 34 hours of work per week, for a total of $272 in weekly wages. Id. ¶ 43. During her first week of work, however, Chen was paid for only 8.5 hours of work, or $68 in wages. Id. ¶ 43. During the weeks that Chen worked 34 hours, she received between $90 and $120 in tips, or an average of $105 per week. Id. ¶ 45. She received $19 in tips during her first week of work. Id. Chen was thus paid $272 in wages and approximately $105 in tips each week she worked at New Fabulous (for a total of $377 per week), except for her first week when she received $87 ($68 in wages plus $19 in tips). Chen thus earned a total of $1,972 during her time at New Fabulous.[4]

On July 24, 2017, Chen began working as a waitress at Ollie's, a restaurant in Manhattan. Id. ¶ 48. Until May 13, 2018, Chen worked between 30 and 40 hours per week at Ollie's, and after that date, she worked 30 hours per week. Id. ¶ 50. Chen was paid $7.50 per hour in 2017, $8.65 per hour in 2018, and $10.00 per hour in 2019 and 2020. Id. ¶ 49. On average, between 2017 and May 13, 2018, Chen received $500 in tips per week at Ollie's. Id. ¶ 51. Between May 13, 2018 and March 28, 2020, Chen received $450 in tips each week. Id. ¶¶ 51-52. Chen could not work during the Coronavirus shutdown, between March 28, 2020, and July 17, 2020. Id. ¶ 52. She returned to work on July 18, 2020, but was only able to work one day a week at Ollie's. Id. ¶ 53.

---

[4] Chen's total earnings was calculated by taking her weekly gross pay of $377 and multiplying it by 5 weeks, and then adding $87, for her first week of work.

Chen provided a spreadsheet which includes the amount of weekly pay she received while working at Ollie's between 2017 and 2020, and she submitted her pay stubs. See ECF Nos. 119-18, 119-19, 119-20, 119-21, 119-22, 119-23, 119-24. During her employment at Ollie's, Chen earned $84,167.25.

From the various jobs she worked following her termination from Shanghai Café, Chen thus earned $94.582.35. Had Chen of continued working at Shanghai Café, she would have earned $301,950. See Whitten v. Cross Garage Corp., No. 00-CV-5333 (JSM) (FM), 2003 WL 21744088, at *4 (S.D.N.Y. July 9, 2003) (calculating back pay by multiplying weekly gross wages by number of weeks since termination to date of entry of judgment). As such, Chen is entitled to an award of back pay of $207,367.65.

### 2. Liquidated Damages

Chen asserts that she is entitled to liquidated damages under the ADEA.[5] See Compl. ¶ G (Prayer for Relief). Under the ADEA, liquidated damages in an amount equal to a plaintiff's award for backpay and benefits is appropriate where the statutory violation was "willful." See 29 U.S.C. § 626(b); McGinty v. State, 193 F.3d 64, 69 (2d Cir. 1999). Willfulness requires a showing that the that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Fink v. City of New York, 129 F. Supp. 2d 511, 523

---

[5] In her memorandum of law in support of her motion for default judgment, Chen also requests liquidated damages under the NYSHRL and NYCHRL. See ECF No. 122 at 12. Chen, however, did not request an award of liquidated damages under the state or city law in her complaint; she asked only for an award of liquidated damages under the ADEA. Compl. ¶ G (Prayer for Relief). A default judgment cannot "differ in kind from, or exceed in amount, what is demanded in the pleadings." Milltex Group Inc. v. Gossard & Berlei Ltd., No. 15-CV-10002 (RA)(KNF), 2018 WL 6624275, at *3 (S.D.N.Y. Sept. 20, 2018). Because Chen did not request such damages in her complaint, she is not entitled to them now. Id. (explaining that "notice that comes at the inquest stage is not sufficient to satisfy the notice requirement of Rule 54(c) and to permit a plaintiff in a default action to recover for damages not claimed in the complaint") (citation, alterations, and internal quotation marks omitted).

(E.D.N.Y. 2001) (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126 (1985))
(quotation marks omitted); see also McGinty, 193 F.3d at 69. If an employer "wholly disregards
the law . . . without making any reasonable effort to determine whether the plan he is following
would constitute a violation of the law," then his actions are considered willful and subject to the
liquidated damages provision of the ADEA. Trans World Airlines, Inc., 469 U.S. at 126
(citations and quotation marks omitted).

 Chen's allegations suggest willfulness on the part of Defendants. As alleged, Defendants
Weng and Gu, who were responsible for hiring employees for the restaurant, repeatedly stated
that they "only wanted young waitresses" and therefore Chen "would not be able to return to
work" after her vacation. Compl. ¶¶ 18, 21, 25, 28, 36, 38; see also Chen Aff. ¶ 25. Further,
Chen submitted an affidavit from another employee of Shanghai Café, Su Ping Yu, who was
employed there at the same time as Chen and attests that after Chen was terminated by
Defendants, Defendants replaced her with "two new waitresses in their 20s." Aff. of Su Ping Yu
("Yu Aff.") ¶¶ 3, 23, ECF No. 121; see also Compl. ¶¶ 39. Yu also attests that she asked why
Chen was not coming back to work and was told by Gu and Lin that, "Now we continue to
employ young employees only, not old ones anymore." Yu Aff. ¶¶ 24-28. Collectively, the
allegations in the complaint and the affidavits of Chen and Yu suggest willfulness on the part of
Defendants. At the very least, the statements made by Weng and Gu indicate a reckless disregard
for the ADEA and the prohibition against terminating an employee because of her age. As such,
the Court will award Chen liquidated damages under the ADEA in the amount of $207,367.65,
which is equal to her award of backpay.

*3. Emotional Distress*

 Chen seeks an award of damages for emotional distress of $65,000. See ECF No. 122 at
13. Courts have identified three categories of emotional distress or mental anguish claims. In the

"garden-variety" emotional distress cases, a plaintiff describes his emotional distress in "vague or conclusory terms." Rainone v. Potter, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005). "Significant" or "substantial" emotional distress claims "consist of more substantial harm, usually evidenced through medical testimony or documentation." Becerril, 2009 WL 2611950, at *6 (citation omitted). "'Egregious' emotional distress claims . . . 'have only been warranted where the discriminatory conduct was outrageous and shocking or where the physical health of the plaintiff was significantly affected.'" Id. (citation omitted).

In her affidavit, Chen attests to suffering from insomnia following her termination due to the stress of having to worry about how she would pay for rent and food. Chen Aff. ¶¶ 56-57. To help with the insomnia, Chen took over-the-counter sleeping pills in 2016 and continued taking those pills in 2017, when they eventually stopped helping her sleep. Id. ¶¶ 57-58. Chen subsequently received from her doctor a one-time prescription for sleeping pills, but took those pills for only a few days in 2018, after which her prescription expired. Id. ¶ 59. Chen has not proffered any medical testimony or documentation to support her allegations. Based on her description of the emotional distress suffered, Chen has provided evidence to support damages for only "garden variety" emotional distress.

In the "garden variety" emotional distress cases, "awards hover in the range of $5,000 to $30,000." Kinneary v. City of N.Y., 536 F. Supp. 2d 326, 331 (S.D.N.Y. Feb. 13, 2008) (citing Bick v. City of N.Y., 1998 WL 190283, at *25 (S.D.N.Y. Apr. 21, 1998)) (quotation marks omitted); accord Rainone, 388 F. Supp. 2d at 122 ($5,000 to $35,000); Fowler v. N.Y. Transit Auth., No. 96 Civ. 6796 (JGK), 2001 WL 83228, at *13 (S.D.N.Y. Jan. 31, 2001) ($5,000 to $30,000) (citations omitted). In Kinneary, for example, the court remitted an award of $125,000 to $25,000 where the plaintiff claimed that he felt embarrassed and disappointed over losing his

17

job, having to rely on the financial support of others, and having to remove his daughter from her school for financial reasons. 536 F. Supp. 2d at 332. The court found it significant that plaintiff did not testify to seeking psychological or medical treatment or that any "particular life activities" were "curtailed" by his distress. Id.; see also Santiago, 2017 WL 9482107, at *23 (awarding $30,000 in emotional distress damages where plaintiff experienced "anxiety, stress, shame and embarrassment, and loss of self worth," but did not seek medical treatment). Like Kinneary, Chen makes similar claims of emotional distress. Chen explains that losing her job caused her "significant stress," which impacted her sleep and caused her insomnia. Chen Aff. ¶¶ 54-59. Although Chen received a prescription for sleeping pills, she took them only for a few days, and does not appear to have sought continued psychiatric help. Id. ¶¶ 59-61. Further, Chen attests that losing her job caused her much embarrassment in her Chinese community, because her friends "belittle[d]" her for having been fired. Id. ¶¶ 63-64. In light of the evidence proffered by Chen, an award of $25,000 in compensatory damages for emotional distress is appropriate.

   *4. Prejudgment Interest*

   Chen requests an award of prejudgment interest, calculated at the rate of 9% per annum pursuant to CPLR § 5004. Compl. ¶ J (Prayer for Relief); see also ECF No. 122 at 14. Prejudgment interest on an award of back pay is available under the ADEA. See Loeffler v. Frank, 486 U.S. 549, 557-58 (1988); Santiago, 2017 WL 9482107, at *24; see also 29 U.S.C. § 626(b). Interest on back pay may be awarded even when a punitive award (*i.e.*, liquidated damages under the ADEA) is made. See Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 282 (2d Cir. 1987). Additionally, prejudgment interest may also be awarded on a plaintiff's award of compensatory damages for emotional distress. See Robinson v. Instructional Systems, Inc., 80 F. Supp. 2d 203, 208 (S.D.N.Y. 2000) (calculating prejudgment interest for backpay and compensatory damages). As such, the Court will calculate an award of prejudgment

interest based $232,367.65, which represents the sum of Chen's award of backpay and emotional distress damages.

The decision of which rate of interest to apply for prejudgment interest is a "'[m]atter[ ] confided to the district court's broad discretion.'" Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1071 (2d Cir. 1995) (quoting Com. Union Assurance Co. v. Milken, 17 F.3d 608, 613-14 (2d Cir. 1994)); see also Chandler v. Bombardier Capital, Inc., 44 F.3d 80, 84 (2d Cir. 1994). Courts hearing federal employment-discrimination cases in this Circuit often apply the federal rate of interest under 28 U.S.C. § 1961 when awarding prejudgment interest, rather than the rate of nine percent under New York Law. See Hogan v. Gen. Elec. Co., 144 F. Supp. 2d 138, 141 (N.D.N.Y. 2001) (awarding prejudgment interest under the ADEA according to the rates of interest referred to in 28 U.S.C. § 1961); Jowers v. DME Interactive Holdings, Inc., No. 00 Civ. 4753 (LTS) (KNF), 2006 WL 1408671, at *11 (S.D.N.Y. May 22, 2006) (awarding prejudgment interest on plaintiff's Section 1981 award based on the Treasury bill yield rate referred to in 28 U.S.C. § 1961); Fitzgerald v. Bondfactor Co., LLC, No. 15 CV 6796 (CM) (FM), 2016 WL 4939082, at *2 (S.D.N.Y. Aug. 31, 2016) (holding that "[t]he Court in its discretion will allow post-award, prejudgment interest but at the federal rate under 28 U.S.C. § 1961, calculated on the published treasury yield.") (citations omitted). Even when there are violations of both state and federal law, as here, "it is common practice in the Second Circuit to apply the federal interest rate pursuant to 28 U.S.C. § 1961(a)." Cioffi v. New York Cmty. Bank, 465 F. Supp. 2d 202, 222 (E.D.N.Y. 2006) (quoting Collins v. Suffolk County Police Dept., 349 F. Supp. 2d 559, 565 (E.D.N.Y. 2004)), vacated on other grounds, 2009 WL 2596885 (E.D.N.Y. Jan 7, 2009). Accordingly, the Court will apply the rate of interest referred to in 28 U.S.C. § 1961 to calculate prejudgment interest on Chen's awards.

To calculate prejudgment interest, the Court will apply the methodology used to calculate the award of prejudgment interest in Robinson. See 80 F. Supp. 2d at 208. That methodology serves the objective of fully compensating Chen. First, the award should be divided pro rata over the appropriate time period—that is, from the date of Chen's termination, March 14, 2016, until the date of entry of this order. Second, once the award is divided, the average annual United States treasury bill rate of interest, referred to in 28 U.S.C. § 1961, will be applied. Finally, to ensure that Chen is fully compensated, the interest will be compounded annually. See Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 144 (2d Cir. 1993) ("Given that the purpose of back pay is to make the plaintiff whole, it can only be achieved if interest is compounded.").

5. *Post-Judgment Interest*

Chen also seeks an award of post-judgment interest. Compl. ¶ J (Prayer for Relief). A plaintiff is "entitled to post-judgment interest on all money awards as a matter of right." Tacuri v. Nithin Constr. Co., No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015) (citations omitted); see also Santiago, 2017 WL 9482107, at *26 (noting that post-judgment interest applies to an award of compensatory and punitive damages) (citations omitted). Under 28 U.S.C. § 1961(a), an award of post-judgment interest is mandatory in any civil case where money damages are recovered. See Espinoza v. Broadway Pizza & Rest. Corp., No. 17-CV-7995 (RA) (KHP), 2021 WL 7903991, at *14 (S.D.N.Y. Nov. 18, 2021), report and recommendation adopted, 2022 WL 977068 (S.D.N.Y. Mar. 31, 2022) (citations omitted). Chen is thus entitled to an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. See Begum v. Ariba Discount, Inc., No. 12-CV-6620 (DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest).

**C.**  **Attorneys' Fees & Costs**

The ADEA authorizes an award of attorneys' fees for the prevailing plaintiff. See Vernon v. Port Auth. of N.Y. and N.J., 220 F. Supp. 2d 223, 228 (S.D.N.Y. 2002) (c. Chen was represented by John Troy, of Troy Law, PLLC. See Decl. of John Troy ("Troy Decl."), ECF No. 119. Chen seeks an award of attorneys' fees in the amount of $76,766.50 for 160.38 hours of work on this case. See id. at ¶ 74; see also id. Ex. 26. Chen also seeks an award of costs in the amount of $1,423.85. Id. ¶ 74. In support of Chen's application, Plaintiff's counsel submitted billing records showing the date on which the services were performed, the time expended, and a description of the services completed. See Troy Decl. Ex. 26, ECF No. 119-26.

District courts exercise "considerable discretion" in awarding attorneys' fees. See D.B. ex rel. S.B. v. New York City Dep't of Educ., 18-CV-7898 (AT) (KHP), 2019 WL 6831506, at *1 (S.D.N.Y. Apr. 22, 2019), report and recommendation adopted, 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019) (citation and internal quotation marks omitted); see also Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 420 (2d Cir. 2010); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008). Attorneys' fee awards are typically determined using the lodestar approach, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R., 658 F.3d 154, 166 (2d Cir. 2011) (quoting Arbor Hill, 522 F.3d at 183)); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553 (2010). "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

In assessing whether the number of hours billed by the attorney is reasonable, courts

consider "whether, at the time the work was performed, a reasonable attorney would have

engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)

(citation omitted). "Hours that are excessive, redundant, or otherwise unnecessary, are to be

excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a

reasonable percentage of the number of hours claimed as a practical means of trimming fat from

a fee application." Kirsch, 148 F.3d at 173 (internal citations and quotation marks omitted);

accord Alicea v. City of New York, 272 F. Supp. 3d 603, 608-09 (S.D.N.Y. 2017). "The Court

also looks at the nature of the legal matter and reason for the fee award in considering what is a

reasonable rate and reasonable time spent on a matter." Kastrati v. M.E.G. Rest. Enter. Ltd., No.

1:21-CV-00481 (KHP), 2023 WL 180043, at *3 (S.D.N.Y. Jan. 13, 2023). A complex case,

which requires that an attorney have particular skills and experience, or cases that require

retaining a firm with the resources needed to effectively prosecute the case, may command

higher hourly rates. Arbor Hill, 522 F.3d at 185-87. The plaintiff bears the burden to produce

"contemporaneous time records indicating, for each attorney, the date, the hours expended, and

the nature of the work done." Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010)

(citation omitted); see also Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020).

*1. Reasonable Hourly Rate & Hours Expended*

The Troy Law Firm is seeking fees on behalf of four attorneys: John Troy, Aaron

Schweitzer, George Byun, and Shuyang Xie. See Troy Decl. ¶¶ 18, 35, 51, 65. Troy, the attorney

of record for Chen and the firm's named partner, seeks a fee of $650 per hour. Id. ¶¶ 18, 34.

Schweitzer, a "managing associate" at the firm with five years of legal experience, seeks a fee of

$400 per hour. Id. ¶¶ 35-37, 41, 50. Byun, an associate who obtained his law degree in 2015,

seeks a fee of $350 per hour. Id. ¶¶ 51-54, 63. Xie, a "junior associate" who was admitted to the

bar in New York in 2018, seeks a fee of $250 per hour. Id. ¶¶ 65-66, 70. Plaintiff also seeks an

award of fees for work performed by Preethi Kilaru, a "managing clerk" at the firm. Id. ¶ 71.

Kilaru, who has an LLM and previously worked as a "legal assistant," requests a fee of $200 per

hour. Id. ¶¶ 71, 73.

In this District, courts have awarded attorneys specializing in employment and civil-

rights cases an hourly rate of $650 per hour for a partner with extensive experience at a large

firm, to between $400 and $275 for an associate, depending on the associate's experience. See

Kastrati, 2023 WL 180043, at *4 (collecting cases); Olaechea v. City of New York, No. 17-CV-

4797 (RA), 2022 WL 3211424, at *13 (S.D.N.Y. Aug. 9, 2022) (collecting cases); see also

Casmento v. Volmar Construction, Inc., No. 20-CV-944 (LJL), 2022 WL 17666390, at *4

(S.D.N.Y. Dec. 14, 2022) (awarding $500 hourly rate to lead counsel in employment-

discrimination case). Troy portrays himself as an experienced and skilled employment lawyer.

See Troy Decl. ¶¶ 20-22. But as has been documented on numerous occasions by other courts in

this District, courts "have balked at the sort of rates requested" by members of the Troy Law

Firm. See Garcia v. Francis Gen. Constr. Inc., No. 20-CV-4323 (JPC), 2022 WL 2698434 at *7

(S.D.N.Y. July 12, 2022) (collecting cases); see also Chen v. Marvel Food Servs. LLC, No. 15-

CV-06206 (JMA) (AYS), 2022 WL 4226098, at *4-5 (E.D.N.Y. Sept. 9, 2022) (collecting

cases). Indeed, courts have repeatedly reduced the rates requested by John Troy "in light of the

consistently poor quality of his work." See, e.g., Rodpracha v. Pongsri Thai Rest. Corp., No. 14-

CV-02451 (DF), 2021 WL 6205861, at *3 (S.D.N.Y. Dec. 29, 2021). Moreover, this case did not

involve novel or difficult questions, "a factor that also goes to the time, labor, and skill that was

required of counsel." Olaechea, 2022 WL 3211424, at *14 (citation omitted).

In short, the requested rates are excessive and are reduced as follows: $325 per hour for

John Troy, $175 per hour for Aaron Schweitzer, $160 per hour for George Byun, $110 per hour

for Xie, and $75 per hour for Preethi Kilaru. Those hourly rates for those individuals are

consistent with the hourly rates approved by courts in this Circuit for work performed by those

attorneys in wage-and-hour cases. See, e.g., Singh v. Meadow Hill Mobile Inc., No. 20-CV-3853

(CS) (AEK), 2021 WL 3862665, at *16 (S.D.N.Y. Aug. 29, 2021) (reasonable rate for Troy,

Schweitzer, and Kilaru); Garcia, 2022 WL 2698434 at *8 (reasonable rate for Troy, Schweitzer,

and Kilaru); Ge Chun Wen v. Hair Party 24 Hours Inc., No. 15-CV-10186 (ER) (DF), 2021 WL

3375615, at *21-22 (S.D.N.Y. May 17, 2021), report and recommendation adopted, 2021 WL

2767152 (S.D.N.Y. July 2, 2021) (reasonable rate for Troy, Schweitzer & Byun); Yuajian Lin v.

La Vie En Schezuan Rest. Corp., No. 15-CV-9507 (DF), 2020 WL 1819941, at *5 (S.D.N.Y.

Apr. 9, 2020) (reasonable rate for Byun); Sun v. Sushi Fussion Exp., Inc., No. 16-CV-4840

(RPK) (LB), 2022 WL 2193441, at *3 (E.D.N.Y. June 17, 2022) (reasonable rate for Xie).

Chen's counsel has billed for 160.38 hours of work. Although the hours are far in excess

of what is typically awarded in cases where the defendant defaults, this is not the typical default-

judgment case. Defendants initially appeared, answered the complaint, and defended the action.

Defendants moved for summary judgment and Plaintiff successfully opposed the motion, at least

in part. See ECF Nos. 29, 36-37, 43. The case was ready for trial in December 2019, and was

scheduled to have proceeded to a jury trial in February 2020. See ECF No. 49. One month before

trial, counsel for Defendants withdrew and Defendants ultimately failed to comply with Court

orders and stopped communicating with Plaintiff's counsel, resulting in the entry of default. See

ECF Nos. 55-57, 68, 85-86, 96-99.

Nevertheless, a review of the billing records provided by Plaintiff's counsel indicates that the hours expended were excessive. The billing records contain several facially unreasonable entries. For instance, John Troy, billed 3.50 hours to "Fil[ing] the Complaint, Summons & Civil Cover Sheet." See ECF No. 119-26 at 2. Troy also billed 1.30 hours to "Create Binder, Set Up/Key in Database," and 0.75 hours to "Mail Mediator Demand with Damage Computation." Id. at 1-2.

Moreover, Troy, the most experienced attorney with the highest billable rate in this case, billed for tasks that should have been handled by less-experienced attorneys or support staff. See Ge Chun Wen, 2021 WL 3375615, at *21 (reducing requested hourly rate where Troy performed work "that could have been handled by more junior lawyers") (citations omitted). For example, Troy billed 2 hours for "EEOC Charge Filed," and 0.40 hours to "Review, Sign Stip[ulation] to Extend time to File Answer." ECF No. 119-26 at 1-2.

Additionally, the time sheets provided by Plaintiff's counsel reflect overbilling by attorneys at the firm or billing for tasks that were not performed in connection with this case. See Singh, 2021 WL 3862665, at *17-18 (applying "across-the-board reduction in the number of hours billed by John Troy of 40 percent" in part because billing records reflected overbilling and attorneys performing clerical work) (citation omitted). For example, Troy spent 4.50 hours drafting a bare-bones and straightforward employment discrimination complaint, and then billed an additional 0.80 hours for "review[ing] the complaint." ECF No. 119-26 at 2. Schweitzer billed a total of 3.92 hours for "motion to amend complaint draft." Id. at 5. Plaintiff never filed an amended complaint in this case. Plaintiff filed two amended complaints in a different case—her wage-and-hour suit that was also pending in this Court at the same time as this case. See No. 16-CV-4790 (VF), ECF Nos. 9, 68. The timing of her filing of the amended complaints in that

wage-and-hour case, however, does not match the date for the work reflected in the billing records submitted here. Regardless, it is apparent from the docket in this case that Plaintiff did not file an amended complaint in this case.

Finally, many of the time entries in the billing records "are too vague to allow for meaningful judicial scrutiny." Ge Chun Wen, 2021 WL 3375615, at *23. For instance, the time sheets include entries with no detail other than "ACDP doc 112"; "Plaintiff(s)' EBT Notice"; and "Review case." ECF No. 119-26 at 3, 5.

"In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours," Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999), as well as time entries that "are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed," Ge Chun Wen, 2021 WL 3375615, at *14 (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). To calculate reasonable hours expended in litigating a case, "[a] district court may . . . use a percentage deduction as a practical means of trimming fat." McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006) (citation and internal quotation marks omitted); see also Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010) (recognizing "the authority of district courts to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application") (citation and internal quotation marks omitted).

The Court will therefore reduce the time charges by 15%. Plaintiff is thus entitled to an award of attorneys' fees of $31,198.79, as detailed in the chart below.

| Individual | Hours Requested | Hours Awarded (reflecting a 15% reduction) | Requested Hourly Rate | Reasonable Hourly Rate | Total Fee Award |
|---|---|---|---|---|---|
| John Troy | 70.76 | 60.146 | $650 | $325 | $19,547.45 |
| Aaron Schweitzer | 28.41 | 24.1485 | $400 | $175 | $4,225.99 |
| George Byun | 43.58 | 37.043 | $350 | $160 | $5,926.88 |
| Shuyang Xie | 12.59 | 10.7015 | $250 | $110 | $1,177.17 |
| Preethi Kilaru | 5.04 | 4.284 | $200 | $75 | $321.30 |
| TOTAL | 160.38 | 136.323 | - | - | $31,198.79 |

*2. Costs*

An employee who prevails in an employment discrimination case is entitled to recover costs. See Hogan v. Gen. Elec. Co., 144 F. Supp. 2d 138, 143 (N.D.N.Y. 2001); Whitten, 2003 WL 21744088, at *7. "As with attorneys' fees, [a] requesting party must substantiate the request for costs." Guo v. Tommy's Sushi, Inc., No. 14-CV-3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016); see also Euceda v. Preesha Operating Corp., No. 14-CV-3143 (ADS) (SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017), report and recommendation adopted, 2017 WL 3084408 (E.D.N.Y. July 18, 2017). "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged [to] fee-paying clients.'" Fisher, 948 F.3d at 600 (quoting Reichman Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987)).

Plaintiffs seek costs in the amount of $1,423.85. Troy Decl. ¶ 74. For the case filing fee, Plaintiff seeks $400. See ECF No. 119-26 at 6. The Court takes judicial notice of the $400 filing fee. See, e.g., Soto v. Los Corbaticas Deli Grocery II Corp., No. 18-CV-3602 (JGK) (JLC), 2018

WL 4844018, at *9 (S.D.N.Y. Oct. 5, 2018), report and recommendation adopted, 2018 WL 6173713 (S.D.N.Y. Nov. 23, 2018) (taking judicial notice of $400 filing fee).

Plaintiff also seeks $400 for costs described as "Translation Café Deluxe 20180103, 1. Xinsheng Gu, 2. Ping Ling, 3. Yili Weng." ECF No. 119-26 at 6. From the vague description provided to the Court, it appears that the $400 may be associated with "translation" costs. Plaintiff, however, has not provided any documentation to substantiate these costs. Likewise, Plaintiff seeks reimbursement for $1.25 in postage, $12 for "service and handling transcript," and $610.60 for "Deposition Transcript," but fails to provide any receipts or invoices to support these cost expenditures. Plaintiff is thus not entitled to an award of these costs. See, e.g., Soto, 2018 WL 4844018, at *9 (declining award of process server fee in the amount of $195 where counsel did not provide documentation to support the amount requested); Acharya v. Solanki, 18-CV-8010 (MKV) (JLC), 2022 WL 1144696, at *9 (S.D.N.Y. Apr. 12, 2022) (declining cost award for $120 process server fees where fee amount was not substantiated).

Plaintiff is entitled to an award of costs in the amount of $400.

## CONCLUSION

For the reasons set forth above, Plaintiff is entitled to default judgment against Shanghai Café, Yili Weng, and Xinsheng Gu, and to an award of back pay, liquidated, and emotional distress damages in the amount of $439,735.30. Plaintiff is also entitled to an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. Additionally, Plaintiff is entitled to an award of attorneys' fees in the amount of $31,198.79, and costs in the amount of $400. The Clerk of the Court is respectfully directed to calculate prejudgment interest on $232,367.65, which comprises the portion of Plaintiff's award attributable to back pay and compensatory damages. Prejudgment interest should be calculated in the manner explained in pages 18-20 of this Opinion and Order, at the rate of interest referred to in 28 U.S.C. § 1961. Finally, Plaintiff is directed to serve a copy of this Order on Defendants and file proof of service of the same on the docket by no later than March 31, 2023.

DATED:      March 24, 2023
            New York, New York

Respectfully submitted,

VALERIE FIGUEREDO
United States Magistrate Judge

Copies to:

All counsel (via ECF)